**CONFERENCE OF MAJOR RELIGIOUS SUPERIORS OF WOMEN, INC., Petitioner,**

v.

**DISTRICT OF COLUMBIA, Respondent.**

No. 18653.

United States Court of Appeals District of Columbia Circuit.

Argued Feb. 11, 1965.

Decided June 4, 1965.

Mr. Ralph F. Berlow, Washington, D. C., with whom Mr. William T. Hannan, Washington, D. C., was on the brief, for petitioner. Mr. Delancey W. Davis, Washington, D. C., also entered an appearance for petitioner.

Mr. Robert E. McCally, Asst. Corp. Counsel for District of Columbia, with whom Messrs. Chester H. Gray, Corp. Counsel, Milton D. Korman, Principal Asst. Corp. Counsel, and Henry E. Wixon, Asst. Corp. Counsel, were on the brief, for respondent.

Before BAZELON, Chief Judge, and DANAHER and McGOWAN, Circuit Judges.

PER CURIAM.

Petitioner here seeks review of a decision of the District of Columbia Tax Court. The latter had affirmed the action of the District's assessing authority in denying a claim for refund of a deed recordation tax of $340 assessed on a deed to the petitioner conveying certain property known as Lot 20, Square 66, at 2158 Florida Avenue, N. W., in the city of Washington. The principal question is whether petitioner is entitled to an exemption from the recordation tax as an "organization" "which [is] charged with the administration, coordination, or unification of activities, locally or otherwise, of institutions or organizations [which are themselves] entitled to exemption under the provisions of [D.C.CODE § 47–801a (1961)]." [1] The Tax Court held that petitioner was not such an organization. Having decided that the Tax Court's construction of this exemption statute is erroneous, we reverse with directions that the refund be granted.

Petitioner was incorporated in Missouri in 1962 as a nonprofit organization. Its objects and purposes, as expressed in its charter, are the following:

"Exclusively to encourage, collaborate on and with, foster and promote educational, charitable, benevolent, eleemosynary, religious, cultural, social welfare, health and literary institutions and agencies operated by Religious Orders or Congregations of Women of the Roman Catholic Church."

Its membership consists of approximately 300 Mother Superiors of Roman Catholic religious communities throughout the country. The Tax Court found that the purpose of acquiring the real property here in question was to provide a location where the purposes and activities of the Conference could be carried out. It further found that these

"activities are in general within the scope or description of its objects and purposes expressed in its char-

ter and are reflected, in large part, by activities and efforts for the promotion, improvement and advancement of the health, teaching and nursing abilities, charitable and social service activities and the spiritual and religious life of the members of the religious orders or communities of which the members of the petitioner are respectively the Mother Superior."

The Tax Court's findings are substantiated by evidence of record. It fairly appears that the petitioner operated as a clearing house of information and ideas for the various religious communities across the country. It held meetings at which representatives of these communities participated. It provided advice as to how the communities could best be organized and operated. Through petitioner's standing committees, information was disseminated and programs undertaken which concerned themselves with the health of community members, the instruction of teachers to qualify them for participation in the numerous educational institutions of all levels operated by the communities, and the award of scholarships to foreign students enabling them to attend schools in this country, presumably run by the various religious communities. Although the elicitation of testimony from the witnesses at the hearing concerning such matters leaves something to be desired in the way of complete specificity, it is clear that the Tax Court well understood the purport of the evidence as to the diverse and qualifying functions carried on by the petitioner.

While D.C.CODE § 45–723(a) (Supp. IV, 1965) imposes a tax of one-half of one percent of the consideration on each deed of real property at the time it is submitted for recordation, D.C.CODE § 45–722 (Supp. IV, 1965) specifically exempts deeds of property acquired by an organization which would be entitled to exemption from real property taxation under D.C.CODE § 47–801a (1961) if the

1. D.C.CODE § 47–801a(q) (1961); and see note 2, infra.

property "was acquired solely for a purpose or purposes which would entitle such property to exemption. * * *" under section 47–801a. The exemption claimed to apply here is spelled out in section 47–801a(q).[2] The Tax Court held that this provision did not apply to the petitioner, stating that

"the petitioner does not administer, coordinate or unify the activities of the religious societies or communities of which its members are respectively the Mother Superior, even if such societies or communities could be said to be 'entitled to exemption under the provisions of [section 47–801a].' What it administers, if anything, and what it coordinates and unifies are activities for the advancement and improvement of the health and religious spirit of those institutions, such [sic] for instance its health program for nuns and like members of religious orders or communities, and the Sister Formation Conference [teacher training]. It does not administer, coordinate or unify the activities, teaching, nursing, charitable and religious, of the religious orders or communities of Catholic women. It does, of course, by advancing and promoting the physical and spiritual welfare of the members of the religious orders or communities indirectly improve the effectiveness of their activities. For instance, healthy and spiritually dedicated nuns or other religious are generally better able to teach and nurse in hospitals or to give religious counsel and training, but that, in the Court's opinion, is not what is contemplated by the exempting provision."

■ ■ We do not accept this construction of section 47–801a(q). That provision does not require that petitioner administer, coordinate, or unify only those activities of a religious community in which it is dealing with third parties, e. g., its charitable and religious functions in lay society. Neither can we accept the District's contention, on brief, that section 47–801a(q) applies only to organizations which have direct authority over their members. The language of the statute is not so limited. On the contrary, it is plain that petitioner's activities bring it within the intendment of Congress as set forth in the governing section.

■ It is true, of course, that exemptions from taxation are to be strictly construed against those claiming the exemption, as we have previously observed. Washington Chapter of American Institute of Banking v. District of Columbia, 92 U.S.App.D.C. 139, 203 F.2d 68 (1953); Hebrew Home for the Aged v. District of Columbia, 79 U.S.App.D.C. 64, 142 F.2d 573 (1944); Combined Congregations of D. C. v. Dent, 78 U.S. App.D.C. 254, 140 F.2d 9 (1943). Congress, however, has stated that the purpose of this particular statute is to provide exemptions for organizations such as the Washington Federation of Churches and the National Catholic Welfare Conference.[3] No evidence was introduced at the hearing to describe the characteristics of these latter organizations and to compare petitioner with them. Were we to assume that they are bodies charged with control of the religious or charitable activities of their members, no reason appears why Congress would have distinguished such entities from the petitioner in the incidence of or the exemption from taxation within the District. Petitioner clearly "co-

2. § 47–801a(q) exempts certain property from real property taxation in the following language:

"Buildings belonging to organizations which are charged with the administration, coordination, or unification of activities, locally or otherwise, of insti-

tutions or organizations entitled to exemption under the provisions of sections 47–801a, 47–801b and 47–801c to 47–801f, and used as administrative headquarters thereof."

3. H.R.Rep. No. 2635, 77th Cong., 2d Sess. 6 (1942).

ordinates" information and programs for its 300 constituent religious communities in the matter of health, education, and community management. As the Tax Court found with respect to its corporate purposes and activities, the petitioner is "charged"[4] with that very responsibility. It is not apparent on the face of the statute why this petitioner should be treated differently from an organization which either has direct authority over its members or coordinates those activities of its members which bring them into contact with the society around them. Neither the language nor the purposes of the statute compel any such distinction.[5]

Although technically the Mother Superiors are the members of petitioner, in reality, as the Tax Court recognized, the Superiors act as nominees or representatives of their respective communities. It was not necessary that petitioner establish that each one of these 300 communities was an organization "entitled to exemption under the provisions of [section 47–801a] * * *." The evidence of record was sufficient to demonstrate and the Tax Court had no difficulty in discerning from the witnesses who appeared the status of the constituent communities as representative. A *prima facie* showing was thus made that these communities would be individually entitled to exemption under D.C.CODE § 47–801a(n) (1961) as "religious corporations or societies." The District made no effort to combat this showing by evidence of the non-exemptive status, potential or otherwise, of any of these communities. The fact outstanding is, and no question has been raised or objection urged to the contrary, that the property involved in this case is to be petitioner's "administrative headquarters."

We are satisfied that the Tax Court misinterpreted the requirements of the statute. Accordingly we reverse and direct that the recordation tax be refunded.

Reversed.

4. The word "charge" is defined as "to intrust (with), by way of responsibility, duty, or the like." MERRIAM-WEBSTER NEW INTERNATIONAL DICTIONARY (2d ed. 1961).

5. Cf. Calvary Baptist Church Extension Ass'n v. District of Columbia, 81 U.S. App.D.C. 330, 158 F.2d 327 (1946), which applied the exemption under § 47–801a(n) to that portion of a Sunday School which was used by two religious organizations as a headquarters. The court disagreed with the conclusion of the Tax Court that "the property was not primarily and regularly used for religious worship or missionary activity * * *." It said:

"The Baptist Convention is an organization of Baptist Churches in the District of Columbia and nearby Maryland, to combine and direct the energies of the Baptist denomination in establishing and extending evangelical, missionary and benevolent work. The Baptist Alliance is an organization of the churches to strengthen denominational influence in advancing and defending religious convictions and in propagating the principles of its faith. No one questions that they are both bona fide religious organizations or that their activities are not entirely devoted to those religious objectives at home and abroad, which almost universally, in state and nation, are considered sufficient to secure immunity from taxation.

" * * * Certainly, it will not be contended that Congress had the slightest idea of discriminating as between denominations, nor, as we have seen, has it done so." 81 U.S.App.D.C. at 331, 158 F.2d at 328.

See also, St. John's Hall, Inc. v. District of Columbia, 92 WASH.L.REP. 339 (1964), aff'd by judgment, No. 18618, D.C. Cir., Jan. 12, 1965.

Such cases support the proposition that the words of the various tax exemption sections, in order to accomplish the purpose of Congress in according exempt status in the first place, are to be construed with a view to treating essentially comparable religious organizations in a similar manner.