**NATIONAL MEDICAL ASSOCIATION, INC., Appellant,**

v.

**DISTRICT OF COLUMBIA, Appellee.**

**No. 90–TX–1157.**

District of Columbia Court of Appeals.

Argued April 9, 1992.

Decided July 28, 1992.

Sanford M. Saunders, Jr., with whom Lisa J. Odle, Sarah C. Carey and Cynthia L. Moore, Washington, D.C., were on the brief, for appellant.

Martin B. White, Asst. Corp. Counsel, with whom John Payton, Corp. Counsel, and Charles L. Reischel, Deputy Corp. Counsel, Washington, D.C., were on the brief, for appellee.

2.  D.C.Code § 22–3832(c)(1)(1989).

Before TERRY and STEADMAN, Associate Judges, and BELSON, Senior Judge.

STEADMAN, Associate Judges:

The National Medical Association ("NMA") is a nonprofit corporation with its national headquarters located in a building owned by it at 1012—10th Street, N.W., in the District of Columbia. The issue before us is whether this real estate is exempt from real property taxes. Both the District of Columbia Department of Finance and Revenue and the Tax Division of the Superior Court have determined that NMA is not entitled to the exemption it seeks. We affirm.

I

The relevant facts are not in dispute and we quote verbatim from the opinion of the trial court.

"The NMA is a nonprofit corporation organized under the laws of the State of New Jersey. The objectives of the association as stated in its constitution and by-laws are: to raise the standard of the medical profession and of medical education; to stimulate favorable relationships among physicians; to nurture the growth and diffusion of medical knowledge and the prompt universal delivery of same; to stimulate education of the public regarding public health; to sponsor just medical laws; and to eliminate discrimination from medical institutions by means of the effective organization of the medical profession within the United States and its territories. The organization's income is derived primarily from dues of its members and from conventions and scientific assembly revenues. NMA sponsors educational and scientific programs throughout the United States. It publishes a monthly journal entitled, 'The Journal of the National Medical Association,' which includes articles, reports, studies and scientific data, submitted primarily by its members. NMA represents the interests of about 16,000 Black physicians practicing nationwide. The organization issues new[s]· releases to newspapers throughout the country and in the District of Columbia. NMA sponsors a major convention once each year in various cities at which various disciplines of medicine are represented. The organization researches and publishes information on important health topics and sponsors conferences in various cities. It sponsors major events and meetings which a physician can attend to meet continuing medical education requirements of either State law or hospital policy. The organization has sponsored various health screening projects in the United States. It has conducted seminars in many cities to educate physicians about the AIDS problem. The local chapter of NMA shares space in the subject real[ty]. The local chapter has about 300 members, and it distributes publications to physicians in this area. The subject property is the headquarters for NMA's activities. The administrative functions are conducted in the building.

The National Medical Association purchased real property in the District of Columbia in 1983 at 1012—10th Street, N.W., to serve as its national headquarters. On June 1, 1987, the association filed an application with the Department of Finance and Revenue of the District of Columbia seeking tax exempt status for the property. The application sets forth its charitable, scientific, and educational purposes generally. It is stated in the application that the use of the building will be to conduct charitable activities, including publication of a medical journal, organization of educational programs, preparation of policy statements related to the needs of Black physicians and patients and presentation of continuing education programs."

Having been denied the requested exemption by both the District taxing authorities and by the Superior Court, NMA takes an appeal to this court.

II

Chapter 10 of Title 47 of the D.C.Code deals with the subject of "Property Exempt From [Real Property] Taxation." D.C.Code §§ 47–1001 *et seq.* (1990). Most of the chapter is devoted to provisions exempting real property owned by a wide

variety of specifically designated institutions. However, § 47–1002 provides a generalized listing of some 23 types of exempt property. NMA's principal reliance is upon § 47–1002(8):

> (8) Buildings belonging to and operated by institutions which are not organized or operated for private gain, which are used for purposes of public charity principally in the District of Columbia.

The District does not challenge the propositions that NMA is "not organized or operated for private gain" or that the building in question is used for "purposes of public charity." The issue that divides the parties is the interpretation of the phrase "principally in the District of Columbia." The District argues that the phrase relates to "public charity" and thus requires that such charity impact "principally" in the District. NMA, on the other hand, argues, as we understand it, that the phrase refers back to the concept of "use" and requires only that the principal use of the building in the District be for purposes of public charity; that is, it does not incorporate any requirement that the activities of the organization principally benefit the District. There is no factual dispute that if the District's interpretation is correct, NMA fails to meet the requirement because of the mainly nationwide scope of its activities.

■ It is firmly established in the jurisprudence relating to the District's real property tax that exemptions from taxation are to be construed strictly against the party claiming an exemption. *Bethel Pentecostal Tabernacle v. District of Columbia*, 106 A.2d 143 (D.C.1954); *Conference of Maj. Rel. Sup. of Women v. District of Columbia*, 121 U.S.App.D.C. 171, 348 F.2d 783 (1965); *compare YMCA v. District of Columbia*, 124 F.Supp. 449 (D.D.C.1953). Furthermore, we must be mindful of the familiar maxim that "if the words are clear and unambiguous, we must give effect to [the statute's] plain meaning." *James Parreco & Son v. District of Columbia Rental Housing Comm'n*, 567 A.2d 43, 45 (D.C.1989).

■ The joint operation of these two principles—strict construction of the statutory tax exemption and straightforward reading of the statute's plain language—compels the conclusion that the exemption provided in § 47–1002(8) is limited to those buildings owned and operated by charitable institutions and used for purposes of charity having its principal impact within the District of Columbia. Thus, in the clause at issue ("buildings ... which are used for purposes of public charity principally within the District of Columbia"), the critical phrase "principally within the District of Columbia" is directly and plainly coupled with "public charity."[1] Ordinary grammatical and syntactical usage squarely supports the statutory interpretation made by the District. Any other reading, such as that proposed here by NMA, would contravene both the rule of narrow construction and the plain meaning of § 47–1002(8).

■ It is also evident from the structure of Title 10 that the drafters were deliberate and specific about those exemptions covering a full range of activities, as opposed to those reaching only activities within the District. For example, § 47–1002(14) provides tax exemption for "[b]uildings belonging to religious corporations or societies primarily and regularly used for religious worship, study, training, and missionary activities." Similarly generalized or unrestricted exemptions are provided for libraries, art gallery buildings, hospital buildings, universities, cemeteries, and churches. *See* §§ 47–1002(6), –(9), –(10), –(12), –(13). In those subsections, by con-

---

1. NMA's interpretation might have been less strained had the word "principally" been inserted at another place in the clause: for example, consider the alternative "buildings ... which are used principally for purposes of public charity within the District of Columbia." In that case, "principally" would arguably refer to the "use" of the buildings, rather than the geographic scope of the charitable activity. Analogous syntax was used in § 47–1002(14), exempting "[b]uildings belonging to religious corporations or societies *primarily and regularly used* for religious worship, study, training, and missionary activities." *Id.* (emphasis supplied). That such phrasing was available to, but not adopted by, the drafters of § 47–1002(8) militates against NMA's interpretation of the provision.

trast with § 47–1002(8), there is no geographic restriction on the impact of the respective institutions' activities. Thus, viewing the constitutive subsections together, one must conclude that the drafters specifically intended the geographic limitation clearly stated in § 47–1002(8).

The legislative history of the subsection provides some further support for this view. As both the House and Senate reports explain, "The word 'principally' has been inserted in this subparagraph in that some of the activities and benefactions of organizations devoted to public charity must, of necessity, reach beyond the confines of the District of Columbia." H.R.Rep. No. 2635, 77th Cong., 2d Sess. (1942) 2; S.Rep. No. 1634, 77th Cong., 2d Sess. (1942) 3. From this explanation,[2] it is apparent that "principally" was specifically inserted to address the question of the geographic target and distribution of an institution's charitable activities located in a given building, and not the proportion of a building's use devoted to charity as opposed to noncharitable or other activities, as NMA would seem to have it.

NMA further argues for real property tax exempt status for the building under subsection 47–1002(8) by analogy with the criteria applied in its sundry other tax exemptions, for example, from income and franchise taxes, personal property taxes, and sales and use taxes. However, the argument from various exemption analogies misses the point that each of the cited statutory exemptions has independent and distinct criteria for exemption. On its own terms, the income and franchise tax exemption reaches only entities "organized and operated to a substantial extent within the District," D.C.Code § 47–1802.1(4), while the personal property tax exemption more broadly covers entities "organized exclusively for charitable purposes," D.C.Code § 47–1508(a)(1), and the exemption from sales and use taxes more narrowly covers an organization that "carries on its activities to a substantial extent within the District, and such activities result in substantial benefit to citizens of the District," D.C.Code § 47–2005(3). Thus, these various tests, each peculiar to its own exemption scheme, are readily distinguishable from each other and from the specific criteria spelled out in subsection 47–1002(8), which we construe today. Furthermore, it is entirely logical and consistent that an eleemosynary entity, such as NMA, might pass the test ("substantial benefit to citizens of the District") for exemption from the sales and use tax, but that its building(s) might nevertheless fail the test ("public charity principally within the District") for exemption under the real property tax scheme.

Finally, NMA contends that the real property in question may be exempt under other subsections, namely, §§ 47–1002(10) and –(17).[3] Subsection 47–1002(10) provides an exemption for "[b]uildings belonging to and operated by schools, colleges, or universities which are not organized or operated for private gain, and which embrace the generally recognized relationship of teacher and student." However, the record here presents no basis to upset the trial court's determination that NMA's "primary focus is not that of a school, college or university embracing the recognized relationship of teacher and student as required by the statute."

2. Using the American Red Cross as an example, the reports further note, "No one could contend that its works of mercy and assistance are or could be limited to the District." H.R.Rep. No. 2635, *supra* at 2–3; S.Rep. No. 1634, *supra*, 3. This explanation reinforces the interpretation that the insertion of "principally" was meant to refer to the geographic scope of charitable activity, and not the "uses" of the building in question. NMA argues from this reference that, since the American Red Cross's activities range widely beyond the District, the exemption should be broadly read. We do not think this lone and somewhat ambiguous sentence in the legislative reports can counterbalance the overwhelming factors against NMA's interpretation.

3. Contrary to what the government has suggested, properties may conceivably qualify under multiple "types or categories of exempt purposes." 9 DCMR 322.1(b) (providing that the property shall qualify "for at least one (1) of the types or categories"). Thus, the various exemption provisions of § 47–1002 are not necessarily mutually exclusive, although their interrelation may be useful for interpretive purposes.

Subsection 47–1002(17) specifically exempts "[b]uildings belonging to organizations which are charged with the administration, coordination, or unification of activities, locally or otherwise, of institutions or organizations entitled to exemptions under the provisions of §§ 47–1002 ... and used as administrative headquarters thereof." Because of our holding that the NMA real property in question does not qualify under any other exemption provision in section 47–1002, perforce it cannot qualify under this special exemption for the administrative headquarters of already exempted entities.

The judgment of the Tax Division is accordingly

*Affirmed.*