**DISTRICT OF COLUMBIA, Appellant,**

v.

**HELEN DWIGHT REID EDUCATION-AL FOUNDATION, Appellee.**

No. 98–TX–836.

District of Columbia Court of Appeals.

Argued Dec. 16, 1999.

Decided Jan. 18, 2001.

Mary T. Connelly, Assistant Corporation Counsel, with whom John M. Ferren, Corporation Counsel at the time appellant's brief was filed, Jo Anne Robinson, Interim Corporation Counsel at the time appellant's reply brief was filed, Charles L. Reischel, Deputy Corporation Counsel, and Lutz Alexander Prager, Assistant Deputy Corporation Counsel, were on the brief, for appellant.

Ralph A. Taylor, Jr., with whom Alvin Dunn, Washington, DC, was on the brief, for appellee.

Before SCHWELB, FARRELL and GLICKMAN, Associate Judges.

GLICKMAN, Associate Judge:

In this case we construe the statutory exemptions from real property taxation that are set forth in paragraphs (8) and (17) of D.C.Code § 47–1002 (1997). The District of Columbia Department of Finance and Revenue (the Department) assessed property taxes on a four-story office building and adjacent parking lot located at 1319 18th Street, N.W., owned by appellee, the Helen Dwight Reid Educational Foundation (the Foundation). The Foundation, a Maryland non-profit corporation, uses this property as the headquarters and base of operations for its educational and philanthropic activities. The Foundation's main activity is the publication of a diverse collection of scholarly journals of interest primarily to specialists in the academic community. After paying the taxes, the Foundation applied for an exemption and a refund, both of which the Department of Finance and Revenue denied. The Foundation appealed the

Department's denial by filing a petition in the Tax Division of Superior Court. On cross motions for summary judgment, the trial court ruled that the Foundation was entitled to an exemption. Granting judgment in favor of the Foundation, the court ordered the District to refund taxes amounting in the aggregate to $417,549 plus interest. The District has appealed.

We reverse the award of summary judgment. On the undisputed facts of record, we hold as a matter of law that the Foundation is not entitled to the exemptions it claims for its District offices under paragraphs (8) and (17) of D.C.Code § 47–1002. We therefore remand with instructions to enter summary judgment in favor of the District.

### I.

In support of its claim to an exemption under § 47–1002, the Foundation relies on the following facts, which were undisputed for purposes of summary judgment. The central mission of the Foundation, carried out from its offices in the District through a division called Heldref Publications, is the acquisition, preservation and publication of scholarly journals that are threatened with being discontinued because of budgetary constraints at the colleges and universities which publish them. Many of these periodicals have small circulations confined mainly to educational and research institutions and to scholars in specialized fields of inquiry. The Foundation saves these journals from extinction by buying them outright from the educational institutions that are unable to continue to support their publication and that seek the

Foundation's intervention. The Foundation then produces and distributes the journals independently, overseeing and coordinating all aspects of publication from its District of Columbia headquarters.

The sale of its academic journals represents the Foundation's principal source of income. Given the economics of publishing specialized scholarly periodicals of limited circulation, the Foundation produces most of its journals at a financial loss. However, through centralization of administration the Foundation does achieve economies of scale and other efficiencies which enable it to continue the publication of meritorious journals that are in financial jeopardy.

The Foundation has received more requests from educational institutions to take over their publications than it has been able to grant. Currently, the Foundation publishes forty-four periodicals. These periodicals cover a wide range of topics and include such journals as *The Germanic Review* (formerly published by Columbia University), *Historical Methods* (University of Illinois), and *Demokratizatsiya: The Journal of Post Soviet Democratization* (American University).[1] Scholarly journals such as these are a major vehicle for the dissemination of knowledge and ideas throughout academia. Moreover, publication of articles in such journals is a key factor in decisions on academic promotion and tenure. For these reasons, the journals that the Foundation publishes play an important and valuable role in the academic world.

To perform the essential work of article selection, review and editing for the periodicals it publishes, the Foundation relies

1. Citing such magazines as *Weatherwise* (described in Foundation literature as "America's only popular weather magazine"), *Rocks and Minerals* ("America's oldest popular magazine about minerals"), *Hospital Topics* ("a forum for hospital and healthcare management striving to stay ahead of the curve") and *World Affairs* (formerly published by the "American Peace Society"), the District for the first time on appeal disputes the proposi-

tion that the Foundation's publications are uniformly academic in origin and scholarly in content. Because the District did not contest the Foundation's statement of material facts and did not raise this factual issue when it litigated the cross motions for summary judgment in the trial court, we disregard it. *See Vessels v. District of Columbia,* 531 A.2d 1016, 1018–19 (D.C.1987).

on and coordinates the contributions of hundreds of scholars and teachers drawn from educational institutions throughout the country. In the case of some journals, however, academics affiliated with the particular colleges or universities that formerly owned and published them continue to shoulder primary editorial responsibility. The Foundation describes itself as publishing such journals in cooperation with their former schools, although the schools are no longer officially responsible for them.

In addition to its publishing activities, the Foundation bestows annual academic grants and awards to recipients in the District of Columbia and elsewhere. The Foundation also regularly donates books to the Eckles Library of Mount Vernon College, and archives its publications at Georgetown University.

## II.

■ "Decisions of the Superior Court in civil tax cases are reviewable in the same manner as other decisions of the court in civil cases tried without a jury." D.C.Code § 47–3304(a) (1997). Both the trial court's award of summary judgment to the Foundation and its reciprocal order denying summary judgment to the District are before us. *See Kuder v. United Nat'l Bank*, 497 A.2d 1105, 1108 (D.C.1985) ("where the grant of summary judgment to one party constitutes a final judgment in the case, and such order is appealed, we hold that the order denying summary judgment to an adverse party is also appealable"). Our review is de novo. We must conduct "an independent review of the record," *District of Columbia v. Pierce Assoc., Inc.*, 527 A.2d 306, 312 (D.C.1987); and "we must be assured not only that no issue of material fact existed but also that the prevailing party was legally entitled to the judgment." *Tompkins v. Washington Hosp. Ctr.*, 433 A.2d 1093, 1098–99 (D.C. 1981). We apply the same standards as the trial court. "In sum, a motion for summary judgment should be granted if (1) taking all reasonable inferences in the light most favorable to the nonmoving party, (2) a reasonable juror, acting reasonably, could not find for the nonmoving party, (3) under the appropriate burden of proof." *Nader v. de Toledano*, 408 A.2d 31, 42 (D.C.1979). "If the facts, construed in a light most favorable to the party opposing the motion, and the inferences from those facts, would not entitle the party opposing the motion to have a favorable jury verdict sustained, then the motion should be granted." *Id.*

■ In this case the material facts as presented to and found by the trial court are not in issue. The main dispute between the parties is not over the facts; it is over the proper construction of the potentially applicable statutory exemptions. In construing those exemptions, our " 'regard for the special function and competence of the Tax Court does not warrant avoiding our responsibility of reaching a decision of our own as to the application of the law to the facts.' " *District of Columbia v. Acme Reporting Co.*, 530 A.2d 708, 712 (D.C.1987) (quoting *District of Columbia v. Seven–Up Washington, Inc.*, 93 U.S.App.D.C. 272, 275, 214 F.2d 197, 200 (1954)).

■■ The record makes plain that the Foundation is a worthy philanthropic enterprise. As noted by the trial court, the Internal Revenue Service has granted the Foundation an exemption from federal income tax under 26 U.S.C. § 501(c)(3). The Foundation has also been exempted from District of Columbia sales and use taxes and is entitled to special postal rates as a nonprofit educational organization. However, as we said in *National Medical Association v. District of Columbia*, 611 A.2d 53, 56 (D.C.1992), each type of tax has its own "independent and distinct criteria for exemption." It is therefore a separate question whether the Foundation's property is exempt from taxation under the District's property tax scheme.

■ The classes of real property that are exempt from taxation under that

scheme are listed and described in the twenty-five numbered paragraphs of D.C.Code § 47–1002. The Foundation contends that its office building is exempt under both paragraph (8) and paragraph (17) of that statute.[2] The trial court found paragraph (17) applicable, and did not reach the question of whether paragraph (8) applied also. Hence we must first examine the criteria of paragraph (17). As we reach a conclusion different from that of the trial court, we then consider the applicability of paragraph (8).

### III.

■ Paragraph (17) of D.C.Code § 47–1002 provides a tax exemption for "[b]uildings belonging to organizations which are charged with the administration, coordination, or unification of activities, locally or otherwise, of institutions or organizations entitled to exemption under the provisions of §§ 47–1002, 47–1005, and 47–1007 to 47–1010, and used as administrative headquarters thereof." As the trial court correctly stated, this exemption has three elements. First, the organization seeking an exemption must prove that it is charged with the administration, coordination, or unification of the activities of other institutions or organizations. Second, the organization must show that those other institutions or organizations are themselves entitled to exemption from real property taxation under District law. Third, the organization must establish that the building for which

it seeks an exemption is used as its administrative headquarters.

The trial court agreed with the Foundation that the activities of its publishing division entitled it to an exemption from property tax under § 47–1002(17). The trial court concluded that the first element of § 47–1002(17) was established because "the Foundation, through Heldref Publications, coordinates and publishes academic journals and critical works for schools, colleges and universities." The court concluded that the second statutory element was met because the educational institutions that the Foundation serves "are not organized or operated for private gain, and . . . embrace the generally recognized relationship of teacher and student," and are thus exempt from property taxes under § 47–1002(10). The court found the third element satisfied because the Foundation's District of Columbia office building is the "administrative headquarters and sole base of operations for all of its educational and charitable activities."

■ The District challenges the trial court's ruling on a number of grounds. We need address only one. We agree with the District that, on the undisputed facts of record, the publishing activities of the Foundation are not the "activities of" other (potentially exempt) institutions, as is required by the first element of § 47–1002(17). Rather, the record affirmatively establishes that those activities are only the "activity of" the Foundation itself.[3]

2. If either of those exemptions is available to the Foundation for its office building, then it is undisputed that the parking lot adjacent to the building is exempt from taxation under paragraph (18)(A) of D.C.Code § 47–1002. That paragraph exempts "[g]rounds belonging to and reasonably required and actually used for the carrying on of the activities and purposes of any institution or organization entitled to exemption under" any of the other provisions of § 47–1002. The parking lot would fall within paragraph (18)(A) because the lot is used by Foundation employees.

Conversely, if the Foundation's office building is not exempt under either paragraph (8) or paragraph (17) of § 47–1002, then the

parking lot cannot qualify for the exemption in paragraph (18)(A).

3. In the trial court the District failed to make the argument it makes now, that the Foundation's publications are not the "activities of" colleges and universities within the meaning of § 47–1002(17). The District thereby ran the risk of waiving that argument on appeal, even though the trial court did pass upon the question of whether the Foundation satisfied the first element of § 47–1002(17); for, as this court has reiterated on innumerable occasions, "[q]uestions not properly raised and preserved during the proceedings under examination, and points not asserted with sufficient precision to indi-

As we understand the statute, the sine qua non of the first element of § 47–1002(17) is that institutions entitled to exemption from property tax must retain at least some significant direction or control over the activities which are being administered, coordinated or unified on their behalf. Otherwise the activities are not *their* activities. That sine qua non of direction or control over the activities by the beneficiary institutions is not present on the record here. Colleges and universities may have requested the Foundation to take over their publications. Those educational institutions may be chief beneficiaries of the Foundation's willingness and ability to do so (to publish "for" those institutions, as the trial court put it, though it might be more accurate to say that the Foundation publishes for the benefit of the academic community as a whole, a broader and more diffuse audience). But such facts do not make Heldref publications the *activities of* colleges and universities, because those institutions do not retain or exercise direction or control over their publication. Nor do those institutions direct or control the Foundation itself, which would be another way for the publications of the Foundation to constitute, indirectly, "their" activities. The periodicals that the Foundation now publishes were, formerly, the *activities of* the schools that founded and used to publish them; but they are no longer so. The schools divested themselves of those activities when they sold the periodicals to the Foundation without reservation of rights.

It is tempting to say (although we do not understand this to be the rationale adopted by the trial court) that the periodicals remain the activities of colleges and universities because the critical editorial functions are performed by academics who are on the faculties of those institutions. Those academics carry out their journalistic endeavors with institutional approval, and help to fulfill institutional goals, including the advancement of knowledge and scholarship. This argument has force, but on the present record we think it does not go far enough to satisfy the statutory language. The record is devoid of evidence

cate distinctly the party's thesis, will normally be spurned on appeal." *D.D. v. M.T.*, 550 A.2d 37, 48 (D.C.1988) (quoting *Miller v. Avirom*, 127 U.S.App.D.C. 367, 369–70, 384 F.2d 319, 321–22 (1967) (footnotes omitted)).

The principle that "normally" an argument not raised in the trial court is waived on appeal is, however, one of discretion rather than jurisdiction. *See D.D. v. M.T., supra.* Thus, parties on appeal "are not limited to the precise arguments they made below" in support of their claims, *Yee v. Escondido*, 503 U.S. 519, 534, 112 S.Ct. 1522, 118 L.Ed.2d 153 (1992). The Supreme Court has also held that even if a claim was not pressed below, it properly may be addressed on appeal so long as it was passed upon. *See United States v. Williams*, 504 U.S. 36, 40–41, 112 S.Ct. 1735, 118 L.Ed.2d 352 (1992). *See also Lebron v. Nat'l R. Passenger Corp.*, 513 U.S. 374, 379, 115 S.Ct. 961, 130 L.Ed.2d 902 (1995). We have long recognized, too, that in "exceptional situations and when necessary to prevent a clear miscarriage of justice apparent from the record," we may deviate from the usual rule that our review is limited to issues that were properly preserved. *Williams v. Gerstenfeld*, 514 A.2d 1172, 1177 (D.C.1986). In general, an appellate court has discretion, in the interests of justice, to consider an argument that is raised for the first time on appeal if the issue is purely one of law, particularly if the factual record is complete and a remand for further factual development would serve no purpose, the issue has been fully briefed, and no party will be unfairly prejudiced. *See* 11 and 19 MOORE'S FEDERAL PRACTICE, §§ 56.41[3][c] and 205.05[2] (Matthew Bender 3d ed.2000).

Those preconditions are satisfied here. Whether the Foundation's publications are, for purposes of § 47–1002(17), the "activities of" the educational institutions that formerly owned and published them, is a mixed question of law and fact, but the factual component of that mixed question is not in dispute. The facts necessary to answer that question were developed on summary judgment by the Foundation itself, which was fully cognizant of the statutory requirements it had to meet. All that is left is the legal significance of those facts, an issue which the Foundation and the District have briefed fully in this appeal. We perceive no risk of unfair prejudice to the Foundation from our consideration of the legal question presented in light of the undisputed facts of record. In the interests of justice, we exercise our discretion to do so.

that colleges and universities direct or control the editorial activity of the individual faculty members who participate in putting out the Foundation's publications. That academic journals are the "activities of" individual faculty members does not, without such evidence, make those journals the "activities of" the schools where the faculty members are employed.

■ Our construction of § 47–1002(17) is thus tied closely to the specific language of the statute, and is not as expansive as it arguably might be. That is not a defect in our analysis, however, for it is a principle "firmly established in the jurisprudence relating to the District's real property tax that exemptions from taxation are to be construed strictly against the party claiming an exemption." *National Medical Association*, 611 A.2d at 55. "Exemptions from taxation are strictly construed against those claiming the exemption, even if the claimant is a charitable or educational institution, because such exemptions are in the nature of a renunciation of sovereignty, and are at war with sound basic tax philosophy which requires a fair distribution of the burden of taxation." *Washington Chapter of Am. Inst. of Banking v. District of Columbia*, 92 U.S.App.D.C. 139, 141, 203 F.2d 68, 70 (1953) (footnotes omitted).

Nor is our analysis inconsistent with what we can discern of Congress's purpose and intent when it enacted the exemption in paragraph (17) in 1942. The legislative history is not detailed. The Senate and House reports accompanying the legislation state only that "[t]he building owned and occupied as the headquarters of the Washington Federation of Churches, *representative of the Protestant denomina-*

*tions in the city,* and the National Catholic Welfare Association, which houses the administrative offices of all *local activities of the Catholic Church* and is presided over by the archbishop, and that portion of the Methodist Building which contains the administrative offices *of that church,* are institutions of the type which this language is intended to cover." S. REP. No. 1634 at 6 (1942); H.R. REP. No. 2635 at 6 (1942) (emphasis supplied). We perceive that in each of these examples, Congress intended to exempt properties used by church-related organizations that administer, coordinate or unify activities that are and remain under church direction or control. There is nothing in the legislative history that would support extension of the exemption to properties owned by independent organizations that administer, coordinate or unify activities that are not directed or controlled by exempt organizations.

Prior judicial construction of the exemption in § 47–1002(17) is also consistent with our understanding of that statute. In *Conference of Major Religious Superiors of Women, Inc. v. District of Columbia,* 121 U.S.App.D.C. 171, 348 F.2d 783 (1965), the Conference, an organization of Mother Superiors representing Catholic religious communities throughout the country, sought a tax exemption for its administrative headquarters in the District of Columbia under D.C.Code § 47–801(a)(q) (1961), the essentially identical predecessor to current § 47–1002(17). The mission of the Conference was to coordinate and administer "information and programs for its 300 constituent religious communities in the matter of health, education, and community management." *Id.,* 121 U.S.App.D.C. at 174, 348 F.2d at 786.[4] Satisfied that the

---

4. Summarizing the evidence of record, the court of appeals described the activities of the Conference as follows:

It fairly appears that the petitioner operated as a clearing house of information and ideas for the various religious communities across the country. It held meetings at which representatives of these communities participated. It provided advice as to how

the communities could best be organized and operated. Through petitioner's standing committees, information was disseminated and programs undertaken which concerned themselves with the health of community members, the instruction of teachers to qualify them for participation in the numerous educational institutions at all levels operated by the communities, and

religious communities themselves would be individually entitled to exemption from property tax as "religious communities or societies," the court of appeals held that the work of the Conference brought it within the requirements of what is now § 47–1002(17). *Id.* That holding is consistent with our construction of the statute. The Conference itself was under the direction and control of its member communities through the Mother Superiors who were their "nominees or representatives." *Id.* The educational, health and other activities that the Conference administered and coordinated were thus activities approved by the communities for their members, and the communities retained ultimate direction and control over those activities.

The only other reported decision addressing § 47–1002(17) is *National Medical Association,* 611 A.2d at 57. In that case an association of physicians claimed an exemption for its headquarters under paragraph (17) even though the association concededly did not administer, coordinate or unify activities of organizations other than itself. We summarily dismissed the notion that the association could invoke paragraph (17) merely because it used its headquarters property to administer its own activities. We noted that since the association was not entitled itself to an exemption under any other provision of § 47–1002, "perforce" it did not satisfy the requirement of paragraph (17) that it be charged with administering, coordinating or unifying activities of institutions or organizations that were entitled to such an exemption. *Id.* Although our decision in *National Medical Association* did not address the significance of the words "activities of" in § 47–1002(17), it is entirely consistent with the meaning we find in those words in this case.

In sum, colleges and universities do not have the power of direction or control over the award of scholarships to foreign students enabling them to attend schools in this country, presumably run by the various religious communities.

the journals that the Foundation publishes. Those journals are therefore not the "activities of" such institutions. For that reason, we hold that the Foundation's headquarters are not exempt from taxation under § 47–1002(17). We turn to the Foundation's alternative argument.

## IV.

The Foundation contends that the publishing and other activities that it carries out from its administrative headquarters in the District of Columbia also entitle it to an exemption from taxation under paragraph (8) of D.C.Code § 47–1002. That paragraph exempts "[b]uildings belonging to and operated by institutions which are not organized or operated for private gain, which are used for purposes of public charity principally in the District of Columbia." The Foundation claims that it meets the requirements of this exemption, because (1) the Foundation is an institution not organized or operated for private gain, (2) it uses its District offices for purposes of public charity, and (3) it uses those offices for such charitable purposes principally in the District.

This court construed § 47–1002(8) in *National Medical Association.* *See* 611 A.2d at 55–56. Analyzing the language of the statute and its legislative history, we held that "the exemption provided in § 47–1002(8) is limited to those buildings owned and operated by charitable institutions and used for purposes of *charity having its principal impact within the District of Columbia.*" *Id.* at 55 (emphasis added). As the District argues, this construction of paragraph (8) dooms the Foundation's exemption claim, because it is undisputed that the "principal impact" of the Foundation's charitable activities is not in the

*Id.,* 121 U.S.App.D.C. at 172, 348 F.2d at 784.

District of Columbia, but rather is nation-wide.[5]

The Foundation responds, however, that if § 47–1002(8) is interpreted to require that the principal impact of its charitable works be in the District, then the statute would be unconstitutional under *Camps Newfound/Owatonna, Inc. v. Town of Harrison*, 520 U.S. 564, 117 S.Ct. 1590, 137 L.Ed.2d 852 (1997). In that case, decided five years after *National Medical Association*, the Supreme Court held that a state property tax exemption for charitable institutions violates the so-called "dormant" commerce clause of the CONSTITUTION, art. I, § 8, cl. 3, if the exemption is limited to institutions operated for the principal benefit of state residents. *Id.* at 572–83, 117 S.Ct. 1590. The Foundation urges us to avoid the need to declare § 47–1002(8) unconstitutional by embracing what it terms "an alternative and constitutional reading of the statute [to require] only that the charitable activities of the taxpayer occur primarily in the District, not that the impact of those activities be felt primarily in the District." The Foundation invites us, in other words, to reverse the holding of *National Medical Association*, on the ground that "statutes should be construed, if reasonably possible, to avoid any doubt as to their constitutionality." *Tyler v. United States*, 705 A.2d 270, 279 (D.C. 1997) (en banc).

 We decline the invitation extended by the Foundation to reinterpret § 47–1002(8). The premise of the Foundation's argument is faulty. D.C.Code § 47–1002(8) was enacted by Congress. The statute therefore cannot offend the dormant commerce clause no matter what it says. While the dormant commerce clause may prohibit state legislatures and other non-federal legislative bodies from enacting burdens on interstate commerce, that clause imposes no limitations on Congress, even when Congress acts "like a state legislature" in exercising its plenary power to legislate for the District of Columbia under art. I, § 8, cl. 17 of the Constitution. *See Neild v. District of Columbia*, 71 App. D.C. 306, 310–11, 110 F.2d 246, 250–51 (1940) (commerce clause constitutes no bar to Congressional enactment of gross receipts tax for the District); *see also Itel Corp. v. District of Columbia*, 448 A.2d 261, 263 (D.C.1982) ("[t]here are not two Congresses, one acting as the national legislature and another serving as the District legislature. An act of Congress, although local in scope, is nevertheless not analogous to a state law enacted by an independent legislature."). *Cf. Milton S. Kronheim & Co., Inc. v. District of Columbia*, 319 U.S.App.D.C. 389, 394–97, 91 F.3d 193, 198–201 (1996) (although restrictions of dormant commerce clause do not apply to laws enacted by Congress, they do apply to laws promulgated by the District of Columbia Council).

This court's construction of § 47–1002(8) in *National Medical Association* therefore poses no issue of unconstitutionality. Bound by that construction, we hold that, on the record before us, the property of the Foundation in the District of Columbia is not exempt from taxation under § 47–1002(8).

## V.

The record shows that there is no genuine issue as to any material fact, and that the property of the Foundation located in the District of Columbia is not exempt from taxation under § 47–1002. We therefore reverse the award of summary judgment to the Foundation, and remand with instructions to enter summary judgment for the District.

*Reversed and remanded.*

---

**5.** The District also challenges the Foundation's contention that its publishing and other activities constitute "public charity" within the meaning of § 47–1002(8). We do not reach this question.