**Kamenko PAJIC, Appellant,**

v.

**FOOTE PROPERTIES, LLC, Appellee.**

**No. 11–CV–1189.**

District of Columbia Court of Appeals.

Argued Nov. 1, 2012.
Decided July 25, 2013.

---

**20.** *Van Arsdall,* 475 U.S. at 684, 106 S.Ct. 1431.

**21.** *Id.*

**22.** 792 A.2d at 236.

**23.** *Id.*

**24.** *Id.*

Julie H. Becker, Legal Aid Society of the District of Columbia, with whom John C. Keeney, Jr., Legal Aid Society of the District of Columbia, was on the brief, for appellant.

Laina Lopez, Washington, DC, for appellee.

Before OBERLY, BECKWITH, and EASTERLY, Associate Judges.

EASTERLY, Associate Judge:

With this opinion, we restate what is already the law in the District of Columbia: Landlords may not include a provision in a lease that requires a tenant to pay

court costs or legal fees. Pursuant to District of Columbia municipal regulation, any such provision is void from the outset and unenforceable. Accordingly, the landlord in this case, Foote Properties, acted illegally when it included a fee-shifting provision in Mr. Pajic's lease, and it was error for the trial court to rely on this provision to award Foote Properties almost $45,000 in attorneys' fees in an action to collect unpaid rent from Mr. Pajic. We also conclude that the trial court erred both in granting summary judgment to Foote Properties and in dismissing Mr. Pajic's counterclaim for breach of contract. Resolution of this case by summary judgment was inappropriate in light of the disputes of material fact regarding whether Mr. Pajic made rent payments to Foote Properties and whether the parties agreed to reduce or waive rent payments due to problems with the apartment's plumbing and air conditioning. Moreover, Mr. Pajic, who was proceeding in the trial court *pro se,* sufficiently made out a counterclaim for a breach of the implied warranty of habitability. We reverse and remand.

## I. Facts

On May 8, 2008, Mr. Pajic entered a twelve-month lease agreement with Foote Properties to rent an apartment at 4275 Foote Street, NE in the District for $1,450 per month. Paragraph 23 of the lease contained a provision purporting to commit Mr. Pajic to pay attorneys' fees "[s]hould it become necessary for Landlord to employ an attorney to enforce any of the conditions or covenants hereof, including the collection of rentals." [1] Upon signing the lease, Mr. Pajic paid Foote Properties $2,980: $1,030 prorated rent for the re-

maining days in May 2008, $1,450 for the last month's rent, and a $500 security deposit. Mr. Pajic moved out of the apartment ten months later, on March 7, 2009.

Foote Properties filed the instant claim in July 2010 as a post-tenancy collection action, asserting that Mr. Pajic breached the lease agreement by failing to pay rent and late fees for several months. Foote Properties sought $11,500 in back rent and late fees, as well as attorneys' fees pursuant to paragraph 23 of the lease agreement. Mr. Pajic, proceeding *pro se,* subsequently filed a verified answer and counterclaim, in which he disputed that he owed Foote Properties $11,500 and asserted that he had made a number of rent payments in cash to the property manager, Frank Chambers. Mr. Pajic also asserted that Foote Properties had failed to address issues with the apartment's air conditioning and plumbing in a timely manner, and that Mr. Chambers had given Mr. Pajic a reduction in rent during the months that the apartment had these habitability issues. Mr. Pajic asserted three counterclaims: (1) breach of contract, for failing to make timely repairs to the problems with the apartment; (2) harassment; and (3) lost wages, pain, and suffering.

After the close of discovery, Foote Properties moved for summary judgment as to both its claim and Mr. Pajic's counterclaims. Foote Properties also requested attorneys' fees, which at that point it calculated to be approximately $11,000. The trial court granted the motion for summary judgment as to Foote Properties' breach of contract claim, but sua sponte converted Foote Properties' motion for summary judgment on Mr. Pajic's three

---

1. In full, paragraph 23 reads:
   ATTORNEYS' FEES. Should it become necessary for Landlord to employ an attorney to enforce any of the conditions or covenants hereof, including the collection of rentals or gaining possession of the Premises, Tenant agrees to pay all expenses so incurred, including a reasonable attorneys' fee.

counterclaims into a motion to dismiss. The court then dismissed Mr. Pajic's counterclaims pursuant to *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009),[2] because it determined these claims did not "plausibly give rise to an entitlement to relief." Regarding Mr. Pajic's first counterclaim (for breach of contract), the court reasoned that Mr. Pajic had failed to allege either a duty that Foote Properties had breached or damages therefrom. Lastly, the court ruled that "there is no material issue of disputed fact as to the obligation of Defendant to pay the attorneys fees and costs associated with the instant action pursuant to the lease agreement." Ultimately the court awarded Foote Properties $8,200 in damages plus attorneys' fees, which had risen to $44,519.67.[3]

## II. The Attorneys' Fees Award

■ Although we determine that the trial court erred in granting Foote Properties summary judgment on its claim for unpaid rent and in dismissing Mr. Pajic's counterclaim for breach of contract, we begin by addressing the challenge to the attorneys' fees award—the issue that prompts us to issue a published opinion in this case. Such fee awards dramatically up the ante for tenants when they seek relief from the courts in disputes with

their landlords and they consequently threaten to chill any such litigation. We determine that inclusion of attorneys' fees provisions in leases is prohibited by municipal regulation and consequently, that the award of fees pursuant to Foote Properties' lease agreement was reversible error.

By its plain language, 14 DCMR § 304.4 expressly bars landlords from placing a provision in a lease shifting to tenants the obligation to pay attorneys' fees should the landlord deem it necessary to resort to litigation.[4] Section 304.4 states that "[n]o owner shall place (or cause to be placed) in a lease or rental agreement a provision ... requiring that the tenant pay the owner's court costs or legal fees." 14 DCMR § 304.4 (2012). Further, should such a provision make its way into a leasing agreement, section 304.4 prohibits its enforcement: "Any provision of any lease or agreement contrary to, or providing for a waiver of, the terms of this chapter ... shall be void and unenforceable." 14 DCMR § 304.1 (2012).

Foote Properties violated section 304.4 by including in its lease a provision that required Mr. Pajic—win *or* lose—to pay "all expenses," "[s]hould it become necessary for Landlord to employ an attorney to enforce any of the conditions or covenants hereof, including the collection of rentals."

---

**2.** This court adopted *Iqbal*'s pleading standard in *Potomac Dev. Corp. v. District of Columbia,* 28 A.3d 531, 544 (D.C.2011).

**3.** The court expressed concern that this was a large sum and ordered Foote Properties to file a declaration justifying an award of this size; the court subsequently determined it was reasonable to require Mr. Pajic to pay this amount pursuant to the lease agreement.

**4.** *Cf. Carlson Constr. Co. v. Dupont W. Condo., Inc.,* 932 A.2d 1132, 1134 (D.C.2007) (noting that, when interpreting municipal regulations, this court follows the well-settled principle of looking first to the plain language of the regu-

lation and proceeding no further if that language is clear and unambiguous (quoting *District of Columbia v. Bender,* 906 A.2d 277, 281–82 (D.C.2006))). Because the regulation's language is unambiguous, we have no need to turn to *Loewinger on D.C. Landlord–Tenant Law,* cited to us by Foote Properties. *See* Kenneth Loewinger & R.J. Turner, Loewinger on D.C. Landlord–Tenant Law § 1.2p (1986). But we would question the propriety of doing so in any event, given that the author of that publication represents it not as a treatise on landlord-tenant law, but as a "survival manual" for landlords who wish to win legal claims against tenants. *See id.* at vi.

Pursuant to section 304.1 this provision should have been "void and unenforceable."

Foote Properties asserts, however, that section 304.4 has no application either to suits for non-payment of rent after a tenancy has ended or to lease provisions where payment of attorneys' fees are conditional. Its arguments do not persuade. Nothing in section 304.4 limits its protection to individuals in ongoing tenancies. Rather, the regulation bars landlords from placing any fee-shifting provisions in a lease in the first instance—that is, when the parties have a landlord and tenant relationship. Likewise, section 304.4 contains no exceptions for conditional fee-shifting provisions.[5] It bars any fee-shifting provision.

■ Alternatively, Foote Properties asserts that the attorneys' fees award was authorized under the second sentence of 304.4, which provides that "[t]his subsection shall not preclude a court from assessing court or legal fees against a tenant in appropriate circumstances." But Foote Properties never asked the trial court to exercise this authority to award it attorneys' fees; instead it cited exclusively to paragraph 23 of the lease. And, unsurprisingly, the trial court never referred to

section 304.4 and gave no indication that it was making a discretionary award of attorneys' fees thereunder.[6] Instead, the trial court made clear that the sole basis for its award of attorneys' fees was the (illegal) fee-shifting provision in the lease.

■ That the fee-shifting provision in the lease was plainly illegal under the D.C. Municipal Regulations and should not have been enforced does not end our analysis. Mr. Pajic, proceeding *pro se,* did not make this argument in the trial court. In general, this court's review on appeal is limited to those issues that were properly preserved. *District of Columbia v. Helen Dwight Reid Educ. Found.,* 766 A.2d 28, 33 n. 3 (D.C.2001). The rule is one of discretion, however; thus, "in 'exceptional situations and when necessary to prevent a clear miscarriage of justice apparent from the record,' we may deviate from the usual rule." *Id.* (quoting *Williams v. Gerstenfeld,* 514 A.2d 1172, 1177 (D.C.1986)); *see also McClintic v. McClintic,* 39 A.3d 1274, 1277 n. 1 (D.C.2012). We have repeatedly affirmed our

> discretion, in the interests of justice, to consider an argument that is raised for the first time on appeal if the issue is purely one of law, . . . the factual record is complete and a remand for further

---

5.  Even so, we fail to see how paragraph 23 is a "conditional" fee-shifting provision. It applies whenever it "become[s] necessary for Landlord to employ an attorney," *i.e.,* in every instance that Foote Properties incurs legal fees in connection with a particular tenant.

6.  This jurisdiction follows "'the American Rule under which . . . every party to a case shoulders its own attorneys' fees, and recovers from other litigants only in the presence of statutory authority, a contractual arrangement, or certain narrowly-defined common law exceptions.'" *Nest & Totah Venture, LLC v. Deutsch,* 31 A.3d 1211, 1229 (D.C.2011) (quoting *Psaromatis v. English Holdings I, L.L.C.,* 944 A.2d 472, 490 (D.C.2008)). We are aware of no statutory authority for attor-

neys' fees in this case and, as discussed above, section 304.4 disallows a contractual arrangement. This leaves common law exceptions to the American rule, which "are primarily designed to encourage or to compensate worthy litigants, [and] the bad faith exception is intended to punish those who have abused the judicial process and to deter those who would do so in the future." *Synanon Found., Inc. v. Bernstein,* 517 A.2d 28, 37 (D.C.1986). But the trial court never made any finding that Foote Properties should be allowed to take advantage of a common law exception or that Mr. Pajic had engaged in any misconduct such that he should have to pay Foote Properties' attorneys' fees as a consequence.

factual development would serve no purpose, the issue has been fully briefed, and no party will be unfairly prejudiced. *Helen Dwight Reid,* 766 A.2d at 33 n. 3; *see also Fairman v. District of Columbia,* 934 A.2d 438, 445–46 (D.C.2007).

■ We think this is one such case. Whether paragraph 23 contravenes section 304.4 is a pure question of law that has been fully briefed by the parties. Furthermore, paragraph 23 is not only plainly illegal, it also contravenes clear public policy meant to promote tenants' access to the courts. *Cf. Fairman,* 934 A.2d at 448 (exercising discretion to review unpreserved challenge to regulations that court determined "violate[d] a clear and dominant public policy"). An obvious objective of the prohibition on fee-shifting provisions is to ensure that tenants can come to court to vindicate their rights without the fear of incurring the obligation to pay vast sums of attorneys' fees for the landlords' counsel.[7] Mr. Pajic's case demonstrates the danger. The trial court determined that Mr. Pajic owed Foote Properties just over $8,000 in back rent but ordered him to pay more than five times that amount in attorneys' fees. In light of the objective to ensure tenants' unfettered access to court, it would make little sense for us to require tenants like Mr. Pajic to know and assert their rights in court to ensure that this access is maintained. We further note that Mr. Pajic, who proceeded *pro se* below, is representative of the vast majority of tenants in landlord-tenant court who cannot afford to retain counsel.[8] For this vulnerable population, a fee-shifting provision is especially fearsome. Because we are unwilling to enforce a manifestly illegal contract provision that would have a grave chilling effect on the ability of tenants to vindicate their rights in court, we choose to exercise our discretion to review and reverse the erroneous award of fees in this case.

### III. The Disposition of Foote Properties' Breach of Contract Claim and Mr. Pajic's Counterclaims

■ We further hold that the trial court improperly granted Foote Properties' motion for summary judgment on its breach of contract claim and dismissed Mr. Pajic's counterclaim for breach of contract.[9]

■ We review the trial court's order granting Foote Properties summary judgment *de novo. Kumar v. District of Columbia Water & Sewer Auth.,* 25 A.3d 9, 15 (D.C.2011). We examine the facts in the light most favorable to Mr. Pajic and consider " 'whether the record demon-

---

7. *Cf. Fleischmann Distilling Corp. v. Maier Brewing Co.,* 386 U.S. 714, 718, 87 S.Ct. 1404, 18 L.Ed.2d 475 (1967) (noting, in defense of the American Rule, "that since litigation is at best uncertain one should not be penalized for merely defending or prosecuting a lawsuit, and that the poor might be unjustly discouraged from instituting actions to vindicate their rights if the penalty for losing included the fees of their opponents' counsel").

8. *See* District of Columbia Access to Justice Commission, Annual Report 2011–2012, at 10, 14, 16 (2012), http://www.dcaccessto justice.org/files/annual/DCATJ_2012_Annual_ Report.pdf (noting a high need for legal assistance in the landlord-tenant court because of the large number of *pro se* litigants); District of Columbia Access to Justice Commission, Justice for All?: An Examination of the Civil Legal Needs of the District of Columbia's Low–Income Community, at 74–77, App'x H (2008), http://www.dcaccesstojustice.org/files/ CivilLegalNeedsReport.pdf (noting a dire need for both attorneys and legal assistance for tenants in landlord-tenant proceedings because, in the 2005 calendar year, tenants represented themselves 97% of the time in landlord-tenant disputes that required a court appearance).

9. Mr. Pajic has not appealed the trial court's ruling dismissing his other counterclaims.

strates that there is no genuine issue of material fact'" requiring resolution at trial. *Id.* (quoting *Phillips v. Fujitec Am., Inc.*, 3 A.3d 324, 327 (D.C.2010)). Disputes of material fact, including whether Mr. Pajic paid his rent for some months in cash or not at all, and whether Mr. Chambers granted Mr. Pajic partial discounts for some months, should have precluded summary judgment in this case.[10]

Mr. Pajic put forward his version of the facts in his verified answer and counterclaim as well as his Opposition to Motion for Summary Judgment, which contained, *inter alia,* portions of his deposition. Rule 56(c) of the Superior Court Civil Rules allows consideration of pleadings, depositions, and affidavits to determine if there is a genuine issue of material fact. In addition, "a sworn complaint 'is tantamount to an affidavit' and may therefore be sufficient to raise a genuine issue of fact." *Raskauskas v. Temple Realty Co.*, 589 A.2d 17, 26 (D.C.1991) (quoting *Thompson v. Seton Invs.*, 533 A.2d 1255, 1257 (D.C.1987)) (overturning a grant of summary judgment on a counterclaim when the appellant's "sworn complaint disputed all of the material facts relied on by appellees' summary judgment motion"). The trial court nevertheless determined that Mr. Pajic had "proffered no evidence that would be admissible at trial demonstrating that a material fact remained genuinely in dispute with respect to his claims of alleged rent credits and cash payments." The court cited several decisions from this court in which we have held that a non-moving party cannot rest on conclusory denials but must offer sufficient evidence to contest material facts. *See, e.g., Boulton v. Institute of Int'l Educ.*, 808 A.2d 499, 502 (D.C.2002). These cases are inapposite, however, in light of Mr. Pajic's specific sworn assertions that he had been given rent abatements to compensate for issues with his apartment and had made rent payments for which he had not been credited. The court's concerns about admissibility were also misplaced; we see nothing to prevent Mr. Pajic from taking the stand at trial and testifying to the assertions in his deposition and sworn pleadings.[11] In short, on this record, summary judgment was inappropriate.

Turning to the trial court's dismissal of Mr. Pajic's counterclaim, our review is, again, *de novo. Potomac Dev. Corp. v. District of Columbia,* 28 A.3d 531, 543 (D.C.2011). We, like the trial court, look to see if "'a complaint ... set forth sufficient information to outline the legal elements of a viable claim for relief or to permit inferences to be drawn from the complaint that indicate that these elements exist.'" *Id.* at 545 (quoting *Williams v. District of Columbia,* 9 A.3d 484, 488 (D.C. 2010)). We do "'not require detailed fac-

---

**10.** In addition, we note that facts asserted by Mr. Pajic which were undisputed or even conceded by Foote Properties were not accounted for in the court's summary judgment ruling and accompanying judgment. Thus, the court's determination that Mr. Pajic owed $8,200 to Foote Properties does not seem to account for the $1,450 last month's rent payment that Foote Properties did not dispute Mr. Pajic made when the lease was executed. (Foote Properties conceded on appeal that Mr. Pajic should have been given credit for this $1,450 payment but was not.) And, although Foote Properties conceded in its Motion for Summary Judgment that its $8,200 claim should have been reduced by the $500 security deposit, the trial court did not reduce its award of unpaid rent by that amount when it entered the judgment.

**11.** Foote Properties specifically contends that Mr. Pajic's testimony about cash payments should not be allowed because Mr. Pajic initially stated that he kept a record of those cash payments but later failed to produce that record. Although the alleged record might have corroborated Mr. Pajic's contention, its absence does not preclude him from testifying that he personally handed cash to one of Foote Properties' agents.

tual allegations,' " but the complaint should contain " 'more than an unadorned, the-defendant-unlawfully-harmed-me accusation.' " *Id.* at 544 (internal quotation marks omitted) (quoting *Iqbal,* 556 U.S. at 678, 129 S.Ct. 1937).

The trial court ruled that Mr. Pajic had failed to "allege[ ] the breach of any cognizable duty owed to [him] by [Foote Properties]." But in his verified answer and counterclaim, Mr. Pajic alleged that Foote Properties failed to timely repair both his air conditioning, when it broke down in the height of summer, and a leak and hole in his bathroom ceiling. These allegations, if credited (as they must be at the 12(b)(6) stage), constitute violations of the D.C. Housing Regulations, and in turn a breach of the warranty of habitability, which must be read into all leases. 14 DCMR § 301.1 (2012); *see also Javins v. First Nat'l Realty Corp.,* 428 F.2d 1071, 1082 (D.C.Cir. 1970). Mr. Pajic did not specifically reference the implied warranty of habitability, but he did assert that these problems founded his breach of contract counterclaim and gave him grounds for a reduction in rent. These allegations sufficiently set forth "the legal elements of a viable claim," *Potomac Dev. Corp.,* 28 A.3d at 543, particularly in light of the "latitude" that we afford to *pro se* litigants in matters of pleading. *See Padou v. District of Columbia,* 998 A.2d 286, 292 (D.C.2010) (" '[p ]ro se* litigants are allowed more latitude than litigants represented by counsel to correct defects in ... pleadings' " (alteration in original) (quoting *Reade v. Saradji,* 994 A.2d 368, 373 (D.C.2010))); *see also MacLeod v. Georgetown Univ. Med. Ctr.,* 736 A.2d 977, 980 (D.C.1999) (recognizing that "[i]n matters involving pleadings, ... *pro se* litigants are not always held to the same standards as are applied to lawyers").

■ The trial judge also dismissed Mr. Pajic's counterclaim on the grounds that the counterclaim failed to "set[ ] forth money damages suffered by [Mr. Pajic] as a result of any such breach." But again we find no deficiency in Mr. Pajic's pleading. "[A] tenant may use breach of the implied warranty of habitability as the basis for an affirmative action for damages in this jurisdiction." *George Washington Univ. v. Weintraub,* 458 A.2d 43, 47 (D.C. 1983). Those damages may be used "to contest the obligation to pay rent" or to seek an abatement for rent already paid. *See id.* at 46 (obligation to pay); *Hsu v. Thomas,* 387 A.2d 588, 589 (D.C.1978) (refund for rent already paid). In addition, a claimant need only prove " 'some reasonable basis on which to estimate damages,' " not exact damages themselves. *Cowan v. Youssef,* 687 A.2d 594, 599 (D.C.1996) (quoting *Romer v. District of Columbia,* 449 A.2d 1097, 1100 (D.C.1982)). In his verified answer and counterclaim, Mr. Pajic not only sufficiently alleged a breach of the implied warranty of habitability, but he also alleged that he paid a number of months in full—several of which were eventually uncontested by Foote Properties—and that he was allowed a reduction in rent because of Foote Properties' alleged breach for two other months. Mr. Pajic adequately plead his damages.

## IV. Conclusion

We reverse the order awarding attorneys' fees. We also reverse the order granting summary judgment as to Foote Properties' breach of contract claim and dismissing Mr. Pajic's breach of contract counterclaim based on a breach of the implied warranty of habitability. We remand for further proceedings consistent with this opinion.

*So ordered.*