*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 23-CV-1020

CORPORATE ACCOUNTABILITY LAB, APPELLANT,

V.

SAMBAZON, INC., APPELLEE.

Appeal from the Superior Court
of the District of Columbia
(2023-CAB-001954)

(Hon. Shana Frost Matini, Motions Judge)

(Argued November 13, 2024     Decided August 14, 2025)

*P. Renee Wicklund*, with whom Kim E. Richman was on the brief, for appellant.

*Brian D. Koosed*, for appellee.

Before BLACKBURNE-RIGSBY, *Chief Judge*, DEAHL, *Associate Judge*, and WASHINGTON, *Senior Judge*.

BLACKBURNE-RIGSBY, *Chief Judge*: This case is on appeal from the trial court's order granting appellee Sambazon, Inc.'s motion to dismiss. Appellant Corporate Accountability Lab (CAL) sued Sambazon for allegedly violating the District of Columbia Consumer Protection Procedures Act (CPPA), D.C. Code §§ 28-3901-3913, by making false and misleading statements about the labor

conditions in its açaí supply chain. The trial court dismissed the complaint, holding that the California Unfair Competition Law (UCL), Cal. Bus. & Prof. Code § 17200 *et seq.*, applied and that CAL did not have standing under the UCL. On appeal, CAL argues that no true conflict exists between the CPPA and the UCL and, therefore, the CPPA applies by default. CAL argues that even if a true conflict exists, the trial court erroneously applied the relevant choice-of-law factors to reach its conclusion that the UCL applies.

We hold that CAL failed to preserve its claim that no true conflict exists between the CPPA and UCL and therefore we assume for the purposes of this appeal that the two laws are in conflict. Applying our choice-of-law principles, we hold that the trial court erred in concluding, at this early stage of the litigation, that the UCL applies. We therefore remand the case to the trial court for further proceedings consistent with this opinion.

## I.    Factual and Procedural Background

"We accept the following facts, alleged in appellant['s] complaint, as true for the purposes of this appeal, as is required when reviewing a trial court's grant of a motion to dismiss." *May v. River E. at Grandview*, 322 A.3d 557, 564 (D.C. 2024). CAL is a nonprofit organization that seeks to expose and hold corporations accountable when they violate human and labor rights. Sambazon, which is

headquartered in California, is "one of the largest exporters of açaí into the United States" and makes its products "available at a wide range of grocery and retail outlets around the nation, including in the District." Açaí trees, which grow to sixty-five feet tall, are so "spindly and thin" that children are tasked with climbing the tree to harvest the fruit, as there is no mechanized process for açaí harvesting. This dynamic has resulted in hazardous child labor becoming endemic in the açaí industry. Moreover, the dangerous nature of açaí harvesting causes workers to become injured with "disturbing regularity."

In marketing its products, Sambazon has made numerous representations about the nature of its supply chain. For example, Sambazon represents that it can ensure that its products are "ethically sourced" and "free from child labor" because it "oversee[s] every step of [the products'] journey." Further, Sambazon claims that "by creating our own responsibly managed supply chain . . . we can establish a direct connection between our farmers and our consumers. . . . We oversee the traceability of the Organic Açaí, from the moment it is wild harvested and transported by riverboats, to its inspection by hand."

CAL claims that Sambazon's representation that it "oversee[s] every step" of the production of its açaí products is "not supported by the realities of its supply chain." Multiple açaí merchants have reported that Sambazon buys fruit outside of

its registered network, as they have sold fruit to Sambazon suppliers without being asked any questions about their working conditions or use of child labor. As a result, according to CAL, Sambazon has made misleading representations in violation of the CPPA's prohibition on unfair or deceptive trade practices.

Sambazon moved to dismiss the complaint under Superior Court Rules of Civil Procedure 12(b)(1) and 12(b)(6), arguing that: (1) District of Columbia choice-of-law rules require the trial court to apply the UCL; (2) CAL lacks standing under the UCL; (3) even if the CPPA applies, CAL lacks standing; and (4) even if CAL has standing under the CPPA, CAL has failed to state a claim under that statute. The trial court granted the motion, holding that the CPPA and UCL were in conflict and that District of Columbia choice-of-law rules required application of the UCL. In ruling that the UCL applied, the trial court relied on: "the lack of any allegation in the Complaint that the conduct of [Sambazon] that caused the alleged injury took place in the District as opposed to California"; "the lack of any ties that either party has to the District"; and "the determination, as a matter of law, that the parties' relationship is centered in California." The trial court also stated that CAL "essentially concedes that [Sambazon] creates its advertising materials in California." Applying the UCL, the trial court determined that CAL did not have standing because the UCL (unlike the CPPA) does not provide for associational standing and CAL "failed to allege that it has lost money or property as a result of

[Sambazon's] deceptive or misleading advertising." The trial court did not address Sambazon's alternative arguments for dismissal. CAL timely noted an appeal.

## II.    Discussion

CAL first argues that the trial court erred in holding that there is a true conflict between the CPPA and UCL because (1) application of the CPPA would advance District policy whereas application of the UCL would not advance California policy, and (2) CAL has standing under both statutes, meaning the outcome of the case would not change if the UCL were to apply. CAL further alleges that even if a true conflict exists, the trial court erred in determining that the UCL applies because it improperly applied and weighed the relevant factors under the Restatement (Second) of Conflict of Laws. In response, Sambazon argues that: (1) CAL failed to preserve its argument that no true conflict exists; (2) even if CAL did preserve that argument, the trial court properly determined that a true conflict exists because CAL lacks standing under the UCL; and (3) the trial court properly applied the Restatement factors.

As we explain below, CAL failed to preserve its claim that no true conflict exists between the CPPA and UCL, and we decline to exercise our discretion to consider this issue given the absence of any factual record at this stage in the litigation. Notwithstanding CAL's failure to preserve the true-conflict issue, we

agree with CAL that the trial court erred in concluding that the Restatement factors mandate application of the UCL at this early stage in the litigation.

## A. Standard of Review

"Choice of law issues are normally treated as questions of law subject to de novo review by this court, meaning, we make an independent determination of which state law to apply." *Washkoviak v. Student Loan Mktg. Ass'n*, 900 A.2d 168, 180 (D.C. 2006) (emphasis omitted) (quoting *Atkins v. Indus. Telecomms. Ass'n, Inc.*, 660 A.2d 885, 888 (D.C. 1995)). Similarly, "[s]tanding (and whether to uphold a dismissal under [Rule] 12(b)(1) for lack of standing) is a question of law[,] which this court considers on appeal de novo." *District of Columbia v. ExxonMobil Oil Corp.*, 172 A.3d 412, 418 (D.C. 2017) (emphasis omitted).[1] "For purposes of ruling on a motion to dismiss for want of standing, [this court] must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." *Grayson v. AT&T Corp.*, 15 A.3d 219, 232 (D.C. 2011) (en banc) (quoting *Warth v. Seldin*, 422 U.S. 490, 501 (1975)); *accord Equal Rts. Ctr.*

---

[1] As in *ExxonMobil*, the trial court here "did not couch its rulings in terms of Rule 12(b)(1) or Rule 12(b)(6) of the Superior Court Rules of Civil Procedure." *Id.* Nonetheless, we construe the order as being a dismissal for lack of subject-matter jurisdiction under Rule 12(b)(1) because although Sambazon brought the motion under both Rule 12(b)(1) and Rule 12(b)(6), the sole basis for the dismissal was the trial court's holding that "[CAL] lacks standing to bring its claim."

*v. Props. Intern.*, 110 A.3d 599, 603 (D.C. 2015) ("[W]e . . . draw all inferences from those factual allegations in the plaintiff's favor.").

### B.    Choice-of-Law Analysis

To resolve choice-of-law issues, this court employs a two-part test.  First, the court must determine whether a "true conflict" exists between the laws of the jurisdictions at issue.  *See Pietrangelo v. Wilmer Cutler Pickering Hale & Dorr, LLP*, 68 A.3d 697, 714 (D.C. 2013).  There is no true conflict "when the laws of the different jurisdictions are identical or would produce the identical result on the facts presented." *USA Waste of Maryland, Inc. v. Love*, 954 A.2d 1027, 1032 (D.C. 2008).  If the laws are not identical and would produce different results, we proceed to the second step, where we assess whether there is a false conflict.  A false conflict occurs "[w]hen the policy of one jurisdiction would be advanced by application of its law, and the policy of the other jurisdiction would not be advanced by application of its law." *District of Columbia v. Coleman*, 667 A.2d 811, 816 (D.C. 1995) (brackets omitted) (quoting *Kaiser-Georgetown Cmty. v. Stutsman*, 491 A.2d 502, 509 (D.C. 1985)).  If there is a false conflict, we apply the law of the jurisdiction whose policy would be advanced by application of its law.  *Id.*

"A true conflict arises when both states have an interest in applying their own laws to the facts of the case." *Barimany v. Urb. Pace LLC*, 73 A.3d 964, 967 (D.C.

2013) (quoting *Herbert v. District of Columbia*, 808 A.2d 776, 779 (D.C. 2002)). If a true conflict exists, we "employ a modified governmental interests analysis" in which we "seek[] to identify the jurisdiction with the most significant relationship to the dispute." *Washkoviak*, 900 A.2d at 180 (internal quotation marks omitted). Put another way, we must "evaluate the governmental policies underlying the applicable laws and determine which jurisdiction's policy would be more advanced by the application of its law to the facts of the case under review." *Id.* (quoting *Coleman*, 667 A.2d at 816). This analysis requires us to consider the four factors enumerated in the Restatement (Second) of Conflict of Laws § 145 to determine whether one jurisdiction's interests would be more advanced by applying their law. *Id.* The four Restatement factors are: "(a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicil[e], residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered." Restatement (Second) of Conflict of Laws § 145 (1971).

In applying the Restatement factors, we do not merely compare whether more factors weigh in favor of one jurisdiction versus the other. *Washkoviak*, 900 A.2d at 181. Instead, "[t]he weight of a particular state's contacts must be measured on a qualitative rather than quantitative scale." *Id.* (quoting *LeJeune v. Bliss-Salem, Inc.*, 85 F.3d 1069, 1072 (3d Cir. 1996)). If the court "cannot determine from the

pleadings which jurisdiction has a greater interest in the controversy" after applying the Restatement factors, the court "must apply the law of the forum state." *Id.* at 182.

## 1. Preservation

This court adheres to "the basic principle that, absent a manifest miscarriage of justice, appellate courts need not, and usually will not, reverse a trial court ruling in a civil case on the basis of arguments made for the first time on appeal." *District of Columbia v. Murphy*, 631 A.2d 34, 39 (D.C. 1993). "In our adversarial system we rely on parties, particularly when they are represented by counsel, to preserve the arguments that may bring them relief and press them on appeal." *Nawaz v. Bloom Residential, LLC*, 308 A.3d 1215, 1231 (D.C. 2024). To that end, "questions not properly raised and preserved during the proceedings under examination, and points not asserted with sufficient precision to indicate distinctly the party's thesis, will normally be spurned on appeal." *District of Columbia v. Helen Dwight Reid Educ. Found.*, 766 A.2d 28, 33 n.3 (D.C. 2001) (quoting *D.D. v. M.T.*, 550 A.2d 37, 48 (D.C. 1988)).

"The principle that 'normally' an argument not raised in the trial court is waived on appeal is, however, one of discretion rather than jurisdiction." *Id.* (quoting *D.D.*, 550 A.2d at 48). As a general matter, this court

> has discretion, in the interests of justice, to consider an argument that is raised for the first time on appeal if the issue is purely one of law, particularly if the factual record is complete and a remand for further factual development would serve no purpose, the issue has been fully briefed, and no party will be unfairly prejudiced.

*Id.* Circumstances in which we have exercised this discretion include: (1) when the trial court addressed the question even though it was not raised, *see id.* (first citing *United States v. Williams*, 504 U.S. 36, 40-41 (1992); and then citing *Lebron v. Nat'l R. R. Passenger Corp.*, 513 U.S. 374, 379 (1995)); and (2) "exceptional situation[s]" in which "review is 'necessary to prevent a clear miscarriage of justice apparent from the record,'" *Thompson v. United States*, 322 A.3d 509, 515 (D.C. 2024) (brackets omitted) (quoting *Pajic v. Foote Props., LLC*, 72 A.3d 140, 145 (D.C. 2013)).

CAL asserts that it preserved its claim that no true conflict exists between the CPPA and UCL because, among other things, it asserted in its opposition to Sambazon's motion to dismiss that Sambazon's conflict-of-law argument "was substantively baseless and ill-timed, being appropriate for a summary judgment

motion instead." We disagree and hold that CAL failed to preserve the true-conflict issue.

In support of its contention that no true conflict exists, CAL makes two specific arguments on appeal. CAL first argues that application of the CPPA would advance District of Columbia policy, whereas application of the UCL would not advance California policy. Separately, CAL argues that an application of these two laws would produce the same outcome in this case because CAL could establish organizational standing under the UCL, just as it could under the CPPA. In the trial court, however, CAL did not present either of these true-conflict theories to the trial court. In fact, CAL failed to make *any* argument as to why there is no true conflict in this case. Instead, CAL argued that (1) it has the right to choose the forum for its suit, (2) any choice-of-law issues cannot be addressed until summary judgment, and (3) the cases on which Sambazon relied were inapplicable. Put simply, CAL failed to develop any legal argument in the trial court to support the claim it now makes on appeal that there is no true conflict between the CPPA and UCL.

To be sure, CAL asserted in its opposition to Sambazon's motion that Sambazon's choice-of-law argument was "substantively baseless." In making this conclusory assertion, however, CAL failed to "indicate distinctly [its] thesis" for why the court should reject Sambazon's choice-of-law arguments. *Helen Dwight*

*Reid*, 766 A.2d at 33 n.3 (quoting *D.D.*, 550 A.2d at 48). As such, we are unwilling to view this assertion as sufficient to preserve CAL's argument on appeal that no true conflict exists between the CPPA and UCL. *See id.* ("[P]oints not asserted with sufficient precision to indicate distinctly the party's thesis[] will normally be spurned on appeal." (quoting *D.D.*, 550 A.2d at 48)). And although we acknowledge that CAL refuted Sambazon's assertion that the conduct at issue took place in California rather than the District, this argument is relevant only to the issue of which law should apply *if a true conflict exists*, not the threshold issue of *whether there is a true conflict*.[2] Because CAL failed to preserve the true-conflict issue, we decline to reach CAL's unpreserved claim that there is no true conflict between the CPPA and UCL.[3]

---

[2] CAL also argues that it preserved the true-conflict issue by asserting in a footnote of its trial court brief that the UCL does "not afford the CPPA's broad public-interest standing." According to CAL, this demonstrates that it argued below that the UCL and CPPA have differing purposes and, therefore, are not in conflict. This argument is unavailing. In raising this point about public-interest standing, CAL was not arguing that no true conflict existed. Instead, it raised this point as part of an assertion that Sambazon was attempting to avoid liability by engaging in "nefarious jurisdiction shopping" and "shoehorn[ing] CAL into bringing this case in a jurisdiction where Sambazon might be able to avoid liability for its deception."

[3] We acknowledge that we would be acting within our discretion to rule on the true-conflict issue, particularly given that the trial court passed on it. *See, e.g.*, *Helen Dwight Reid*, 766 A.2d at 33 n.3. We decline to do so, however, because of the procedural posture of this case. CAL argues that it has organizational standing under the UCL—and that, therefore, there is no true conflict between the CPPA and

## 2. The trial court erred in concluding, based solely on the complaint, that the UCL applies

Because CAL failed to preserve its argument that no true conflict exists, we now must decide whether the choice-of-law principles applicable to a true conflict mandate application of the UCL in this case. In evaluating the policies underlying the CPPA and UCL, it is clear that both the District and California have a strong interest in applying their laws to CAL's complaint. In enacting the UCL, California

---

UCL as applied to this case—because the UCL affords standing to an organization when, "in furtherance of a bona fide, preexisting mission, [the organization] incurs costs to respond to perceived unfair competition that threatens that mission." *Cal. Med. Ass'n v. Aetna Health of California Inc.*, 532 P.3d 250, 255 (Cal. 2023). Because it alleges that it "expended resources investigating Sambazon's policies, products, and representations" and "intervened in disputes surrounding Sambazon's 'Fair For Life' certification and how the process fails to protect against abuses sufficiently," according to CAL, it has satisfied the UCL's organizational-standing standard. At this point in the litigation, however, there is no factual record to substantiate these allegations; the trial court dismissed the complaint before the case proceeded to discovery. As such, this case differs from others in which we have ruled on an unpreserved issue that the trial court passed on because in those cases "the factual record [wa]s complete and a remand for further factual development would [have] serve[d] no purpose." *Helen Dwight Reid*, 766 A.2d at 33 n.3 (internal quotation marks omitted) (resolving an issue of statutory interpretation that the trial court passed on even though the appellee failed to press the relevant argument in the trial court because "[t]he facts necessary to answer that question were developed on summary judgment" and "[a]ll that is left is the legal significance of those facts"). Further, this is not an "exceptional situation" in which review is needed "to prevent a clear miscarriage of justice apparent from the record." *Thompson*, 322 A.3d at 514 (quoting *Pajic*, 72 A.3d at 145). As explained *infra*, we agree with CAL that the trial court erred in determining that the UCL applies in this case and are remanding the case for further proceedings, which is the precise relief that CAL seeks in this appeal.

sought to "protect both consumers and competitors by promoting fair competition in commercial markets for goods and services." *Kasky v. Nike, Inc.*, 45 P.3d 243, 249 (Cal. 2002). After initially enacting the UCL, however, California adopted a standing requirement under which an organization such as CAL does not have standing to sue unless it has "incur[red] costs to respond to" certain conduct "that threatens" the organization's "bona fide, preexisting mission." *Cal. Med. Ass'n*, 532 P.3d at 255. California adopted this requirement for the purpose of "eliminat[ing] standing [under the UCL] for those who have not engaged in any business dealings with would-be defendants" in order to "strip such unaffected parties of the ability to file shakedown lawsuits" and "preserv[e] for actual victims of deception and other acts of unfair competition the ability to sue and enjoin such practices." *Kwikset Corp. v. Superior Ct.*, 246 P.3d 877, 881 (Cal. 2011) (internal quotation marks omitted).

The District, meanwhile, enacted the CPPA to, among other things, "assure that a just mechanism exists to remedy all improper trade practices and deter the continuing use of such practices . . . ." *Washkoviak*, 900 A.2d at 181 n.17 (quoting D.C. Code § 28-3901(b)). Further, and in contrast to the UCL, the CPPA was constructed such that "there is no requirement that any consumer in fact be misled by the deceptive statements." *Earth Island Inst. v. Coca-Cola Co.*, 321 A.3d 654, 664 (D.C. 2024) (citing D.C. Code § 28-3904); *accord* D.C. Code § 28-3904 ("It

shall be a violation of this chapter for any person to engage in an unfair or deceptive trade practice, whether or not any consumer is in fact misled, deceived, or damaged thereby . . . .").  Given that each jurisdiction has a strong interest in applying their consumer-protection statute to this case, we must "look at the two jurisdictions' respective relationships to the complaint by examining the four factors set forth in the Restatement" to determine which law applies.  *Washkoviak*, 900 A.2d at 181.

With respect to the first Restatement factor—the place where the injury occurred—Sambazon concedes that the trial court did not err in determining that this factor weighed in favor of the District because the alleged injury occurred in the District.  Indeed, as the trial court noted, CAL alleges that Sambazon "engaged in deceptive schemes and acts directed at persons residing in, located in, or doing business in the District of Columbia."  This factor therefore weighs in favor of the District.

The second Restatement factor requires us to consider the place where Sambazon's conduct occurred.[4]  *See id.* at 180.  According to CAL, this factor cannot weigh in favor of California at this stage in the litigation because the parties have

_____

[4] The trial court focused this inquiry on the location in which Sambazon sets its practices and policies.  Because CAL does not argue otherwise, we assume without deciding that the location in which Sambazon created the relevant advertisements is the focus of this inquiry for purposes of this appeal.

not conducted discovery and the complaint contains no allegations about where Sambazon engaged in the allegedly illegal conduct.[5] We agree. The complaint does not contain any facts regarding the location in which Sambazon created the relevant advertisements beyond the fact that Sambazon is headquartered in California. At this stage in the litigation, we must "draw all inferences from [the plaintiff's] factual allegations in the plaintiff's favor." *Equal Rts. Ctr.*, 110 A.3d at 603. Accordingly, the fact that Sambazon is headquartered in California, without more, is insufficient for us to conclude that Sambazon engaged in the allegedly illegal conduct in California. Without any allegations concerning the location in which Sambazon engaged in the conduct at issue, this factor does not currently weigh in favor of either California or the District for purposes of the choice-of-law analysis. *See Thermal Dynamics Int'l, Inc. v. Safe Haven Enters., LLC*, 952 F. Supp. 2d 143, 146, 150 (D.D.C. 2013) (concluding that "the second [Restatement] factor is irrelevant to the Court's analysis" when the complaint included no allegations concerning the

---

[5] Sambazon argues that CAL waived this argument by failing to raise it below. Sambazon is incorrect. CAL asserted below that "the fact the [sic] Sambazon *may* create the deceptive advertisements in California is immaterial" to the merits of Sambazon's motion, noting that "Sambazon is free to argue as much on summary judgement [sic]" if "the facts elicited in discovery" supported such a contention. Although CAL is more precise in making this argument on appeal than it did below, its argument below and its argument on appeal both boil down to the same premises: (1) the complaint contains no allegations about where Sambazon engaged in the allegedly illegal conduct; and (2) it is premature to rule at this stage that this factor weighs in favor of California because discovery is needed to determine where Sambazon's conduct occurred. As such, CAL has preserved this argument.

location in which the defendants made the alleged misrepresentations).  As CAL suggests, information could be elicited through discovery about where Sambazon makes decisions concerning the representations it makes on its products.

To be sure, some federal courts applying our choice-of-law principles have ruled that this factor weighed in favor of the jurisdiction in which the defendant was headquartered when the plaintiff did not allege facts suggesting that the defendant engaged in the conduct in a different jurisdiction.  *See Krukas v. AARP, Inc.*, 376 F. Supp. 3d 1, 30 (D.D.C. 2019); *In re APA Assessment Fee Litigation*, 766 F.3d 39, 54 (D.C. Cir. 2014); *accord Washkoviak*, 900 A.2d at 181.  These cases, however, are distinguishable.  Sambazon principally relies on *In re APA Assessment Fee Litigation*, in which the court concluded that the second factor weighed in favor of applying District of Columbia law when the plaintiffs alleged that the defendant's principal place of business was located in the District.  766 F.3d at 54.  Critically, however, the plaintiffs also alleged that "significant events giving rise to this case took place in this District."  *Id.* (internal quotation marks omitted).  Here, CAL has not alleged that *any* events giving rise to this case took place in California.  Accordingly, the case is inapposite.  In *Krukas* and *Washkoviak*, it was the *plaintiff*— not the defendant—that asserted that the relevant conduct occurred in the state in which the defendant was headquartered.  *See Krukas*, 376 F. Supp. 3d at 30; *Washkoviak*, 900 A.2d at 181.  Here, CAL has made no such assertion; instead,

Sambazon is the party asserting that the relevant conduct took place in California. Because we must construe all inferences in favor of the plaintiff at this stage, *see Equal Rts. Ctr.*, 110 A.3d at 603, these cases do not support a finding that the second Restatement factor weighs in favor of applying the UCL. We therefore conclude that the second Restatement factor does not favor either jurisdiction at this stage in the proceedings.

The third Restatement factor, which concerns the place of incorporation and place of business of the parties, favors application of the UCL. Sambazon is headquartered in California, and CAL does not assert that it is headquartered in either California or the District. Thus, in this choice-of-law analysis, factor three weighs in favor of applying the UCL.[6]

With regard to the fourth Restatement factor—the place where any relationship between the parties is centered—CAL argues that it is inapplicable to

---

[6] In weighing this factor, the trial court concluded that "neither [party] has any ties to the District." We note that both parties construe this statement as a determination from the trial court that this factor weighed in favor of neither jurisdiction. In its reply brief, CAL appears to suggest that: (1) Sambazon does not dispute the trial court's determination; and (2) if we were to reexamine this factor, we should weigh it in favor of the District because CAL is standing in the shoes of District consumers. We disagree on both points. In its brief, Sambazon contends that, "when choosing between [District] and California law, this factor weighs, if anything, in favor of applying California law because, unlike [the District], California is the domicile of at least one of the parties here." Sambazon has thus put

this case because CAL had no preexisting relationship with Sambazon.[7]  Sambazon

counters by urging us to consider where the relationship between Sambazon and

*District residents* is centered because CAL is bringing the suit on behalf of District

residents.  We agree with CAL and conclude that the fourth Restatement factor is

inapplicable to this case.

The text of the Restatement is clear that this factor only applies if there is a

relationship between the parties.  Restatement (Second) of Conflict of Laws § 145

(1971) ("[T]he place where the relationship, *if any*, between the parties is centered."

---

forth a position on appeal that challenges the trial court's determination with respect to this factor.  Accordingly, we conclude that Sambazon has not conceded that this factor weighs in favor of neither jurisdiction.  Further, we reject CAL's suggestion that District consumers, not CAL, are the relevant party for purposes of this analysis. The Restatement is clear that this factor applies to "the domicil[e], residence, nationality, place of incorporation and place of business of *the parties*."  Restatement (Second) of Conflict of Laws § 145 (1971) (emphasis added).  Moreover, CAL identifies no authority—and we are aware of none—to support its suggestion.

[7] Sambazon argues that CAL waived this argument by failing to raise it below. We disagree.  Although CAL did not make this argument below as precisely as it does here, CAL nonetheless addressed these points sufficiently to preserve them on appeal.  In the trial court, CAL argued that Sambazon's reliance on *Margolis v. U-Haul International, Inc.*, 818 F. Supp. 2d 91 (D.D.C. 2011) was "misplaced."  CAL distinguished this case from *Margolis* by noting that the court in *Margolis* applied Maryland law rather than District of Columbia law because there were extensive direct contacts between the plaintiff and defendant in Maryland as opposed to one limited contact in the District.  CAL also distinguished *Margolis* by noting that the plaintiff was a consumer seeking money damages, which necessarily implies that a relationship existed between the plaintiff and the defendant.  Because CAL distinguished *Margolis* in a manner that directly bears on its argument that this factor is inapplicable here, we conclude that CAL preserved this argument.

(emphasis added)). Indeed, a comment to the Restatement states that this factor should be considered when (1) "there is a relationship between the plaintiff and the defendant," and (2) "the injury was caused by an act done in the course of the relationship." *Id.* § 145 cmt. e. Here, CAL does not allege that there is a relationship between the parties. Further, Sambazon appears to concede that no injury was caused in the course of any relationship, as it asserts that "CAL fails to plead an injury in fact to *itself*." Thus, according to the plain text of the Restatement provision and the relevant comment to that provision, this factor does not apply in this case.

A review of the case law further supports the conclusion that the trial court erroneously applied this inapplicable factor. The trial court relied on *Krukas*, in which the plaintiff alleged violations of the CPPA "based on her purchase of a Medicare supplemental health insurance policy . . . administered by [the defendant]." 376 F. Supp. 3d at 9. The plaintiff alleged that (1) the defendant "offered participation in those group policies to individual AARP members and the general public," (2) she purchased the policy from the defendant, and (3) she paid monthly premiums to the defendant. *Id.* at 9-10. Thus, the plaintiff in that case clearly alleged a relationship between herself and the defendant. Here, on the other hand, CAL did not allege that it had any relationship with Sambazon. Similarly, in *Washkoviak*, this court applied the fourth factor in light of the borrower-lender relationship between the plaintiff and the defendant. *See* 900 A.2d at 172-73, 181

("[Plaintiff] consolidated his loans with [defendant] in 1992."). As such, *Krukas* and *Washkoviak* do not provide support for Sambazon's argument that the fourth factor is applicable here. Instead, this case is more analogous to *American National Insurance Co. v. JPMorgan Chase & Co.*, 164 F. Supp. 3d 104 (D.D.C. 2016). In that case, plaintiff-bondholders sued an entity that had purchased all of the bond-issuing bank's assets after the bond values had deteriorated during the 2008 financial collapse. *See id.* at 105-06. The court determined that "[t]his factor simply does not apply" because "[t]here is no alleged relationship between [the defendant] and the Plaintiff bondholders, and no injury alleged to have been suffered during the course of such a relationship." *Id.* at 110. The rationale of *American National* applies equally here and confirms our conclusion that the fourth factor is inapplicable in this case.

Sambazon urges us to assess the fourth factor by looking at the relationship between Sambazon and District consumers—rather than between Sambazon and CAL—because CAL brings this suit to vindicate the rights of District consumers. We disagree. As with the third Restatement factor, *see supra* at note 6, the Restatement is clear that this factor applies to any relationship "between *the parties*." Restatement (Second) of Conflict of Laws § 145 (1971) (emphasis added). Moreover, Sambazon identifies no authority—and we are aware of none—to support its argument that District consumers should stand in the place of the plaintiff for

purposes of this choice-of-law analysis. Accordingly, we reject Sambazon's argument.

In weighing these factors, one factor weighs in favor of the District (the place where the injury occurred); one factor weighs in favor of California (the place of incorporation and place of business of the parties); one factor cannot be discerned at this stage of the litigation (the place where the conduct causing the injury occurred);[8]

---

[8] We note that, as Sambazon emphasized in its brief and at oral argument, a comment to the Restatement provides that "the place of injury is less significant in the case of fraudulent misrepresentations . . . and of such unfair competition as consists of false advertising and the misappropriation of trade values. . . . Instead, the principal location of the defendant's conduct is the contact that will usually be given the greatest weight." Restatement (Second) Conflicts of Laws § 145 cmt. f (1971). According to the Restatement, this is so because

> the injury suffered through false advertising is the loss of customers or of trade. Such customers or trade will frequently be lost in two or more states. The effect of the loss, which is pecuniary in its nature, will normally be felt most severely at the plaintiff's headquarters or principal place of business. But this place may have only a slight relationship to the defendant's activities and to the plaintiff's loss of customers or trade.

*Id.* Based on the allegations at issue in this case, we are not convinced that the principal location of Sambazon's conduct must be given the greatest weight. As CAL argued at oral argument, this comment to the Restatement assumes that the dispute at issue is one in which a plaintiff-business is claiming to have lost customers or trade as a result of the defendant-business's false advertisements. That is not the sort of dispute at issue in this case; as discussed, Sambazon itself asserts that "CAL fails to plead an injury in fact to *itself*." Because we are unable to determine the location of Sambazon's conduct at this stage in the litigation, however, we need not decide whether the principal location of Sambazon's conduct must be given the greatest weight.

and one factor is inapplicable to this case (the place where any relationship between the parties is centered). We acknowledge that in *Washkoviak* we quoted a comment to the Restatement that provides that "'the place of injury is less significant in the case of fraudulent misrepresentations' than 'in the case of personal injuries and of injuries to tangible things' or cases of false imprisonment and malicious prosecution." 900 A.2d at 181-82 (quoting Restatement (Second) Conflicts of Laws § 145 cmt. f). The fact that the place of injury here is the District, then, might ordinarily diminish the significance of that contact in the choice-of-law analysis. In this case, however, we do not reach that conclusion. As discussed, the only other factor for which we are able to make any sort of judgment at this stage of the proceedings is the third factor, which weighs in favor of California because Sambazon is headquartered in California. As explained in a separate comment to the Restatement, however, this factor also has diminished significance in this case:

> The fact, for example, that one of the parties is domiciled or does business in a given state will usually carry little weight of itself. On the other hand, the fact that the domicil[e] and place of business of all parties are grouped in a single state is an important factor to be considered in determining the state of the applicable law.

Restatement (Second) Conflict of Laws § 145 cmt. e. Because Sambazon concedes that CAL is not headquartered in California, this is not a case in which "the

domicil[e] and place of business of all parties are grouped in a single state." *Id.* Accordingly, this factor carries less significance than it otherwise might.

We are thus left with both California and the District having only a single factor, each with diminished significance given the facts of the case, that weigh in favor of applying their respective law. We conclude that we are unable to make a definitive determination at this early stage in the proceedings as to which jurisdiction has the most significant relationship to this dispute. Like in *Washkoviak*, "given the lack of evidence available in the record defining the connections between [the appellant's] claims and either jurisdiction, it is difficult to make any kind of qualitative judgment at all" when weighing the factors. 900 A.2d at 182. And "because we must make our choice of law determination in the context of a [motion to dismiss]," *id.*, under which we must "construe the complaint in favor of the complaining party," *Grayson*, 15 A.3d at 232 (quoting *Warth*, 422 U.S. at 501), "we must resolve any uncertainty in [CAL's] favor," *Washkoviak*, 900 A.2d at 182. Accordingly, we hold that the trial court erred in applying the UCL because the law of the forum jurisdiction—the CPPA—applies when it is unclear which jurisdiction has a greater interest in the litigation. *See id.* (providing that if the court "cannot

determine from the pleadings which jurisdiction has a greater interest in the controversy," the court "must apply the law of the forum state").

For these reasons, we hold that the trial court erred in concluding that the factual allegations in CAL's complaint require application of the UCL. As we did in *Washkoviak*, "[w]e leave open the possibility that, after both parties have been afforded the opportunity to conduct discovery and present evidence, the trial court may conclude, upon motion for summary judgment, that [California] has a greater interest than the District of Columbia in the resolution of this controversy" and that the UCL, rather than the CPPA, applies in this case. *Id.* at 183. We thus emphasize that our holding is "only that, within the present context of a . . . motion to dismiss . . . it is not clear that the law of [California] should be applied rather than the law of the District of Columbia at this point in the proceedings." *Id.*

## C. Remaining Issues on Remand

In its motion to dismiss, Sambazon argued in the alternative that even if the CPPA applied, the trial court should dismiss the complaint because (1) CAL lacked standing, and (2) CAL failed to state a claim for relief. CAL disputed both claims, arguing that it has standing under two separate provisions of the CPPA and that it pleaded sufficient facts to state a claim for relief. We take this opportunity to briefly

summarize the parties' arguments with respect to both issues, which, as explained below, the trial court will need to address on remand.

On the issue of standing, CAL first argues that it has standing pursuant to Section 28-3905(k)(1)(D) of the CPPA, which permits a "public interest organization" to bring suit "on behalf of the interests of a consumer or a class of consumers . . . if the consumer or class could bring an action" so long as the organization has a "sufficient nexus to the interests involved or the consumer or class to adequately represent those interests." D.C. Code § 28-3905(k)(1)(D). Second, CAL asserts that it has standing pursuant to Section 28-3905(k)(1)(C), which permits a "nonprofit organization" to bring suit "on behalf of the general public" to "seek[] relief from the use of a trade practice" that violates District law. *Id.* § 28-3905(k)(1)(C). Sambazon, meanwhile, argues that CAL does not have standing under both: (1) Section 28-3905(k)(1)(D) because it failed to identify a consumer or class of consumers that could sue in their own right, *see Animal Legal Defense Fund v. Hormel Foods Corp.*, 258 A.3d 174, 184-85 (D.C. 2021); and (2) Section 28-3905(k)(1)(C) because non-profit organizations suing under that

provision are still required to plead a concrete injury in-fact, which CAL failed to do.

With respect to whether CAL pleaded facts sufficient to state a claim, CAL argues that the representations Sambazon makes online and on its product packaging do not amount to "puffery" and are not "properly qualified." *See Earth Island Inst.*, 321 A.3d at 666-70 (describing and applying the puffery doctrine). According to CAL, it pleaded facts sufficient to show that Sambazon's representations are false or misleading because "CAL alleges that child labor is endemic to açaí harvesting such that avoiding its involvement would be almost impossible, and that two açaí merchants in Brazil have said that they sold açaí berries to ships supplying Sambazon with 'no questions asked.'" Sambazon, meanwhile, argues that CAL failed to plead actionable misrepresentations because the representations it identified in the complaint (1) amount to "puffery," (2) are not alleged to be inaccurate, and/or (3) are not misleading when read in context.

The trial court did not address either of Sambazon's alternative claims. Accordingly, we decline to address the parties' arguments with respect to these issues and remand the case to the trial court so that it can address them in the first instance. *See, e.g.*, *Bartel v. Bank of Am. Corp.*, 128 A.3d 1043, 1048 (D.C. 2015) ("[W]e 'exercise our discretion to leave those issues for resolution by the trial court

in the first instance.'" (brackets omitted) (quoting *Folks v. District of Columbia*, 93 A.3d 681, 686 (D.C. 2014))); *Clampitt v. American Univ.*, 957 A.2d 23, 42-43 (D.C. 2008) (acknowledging that the remaining issue on remand would be a question of law but nonetheless concluding that "we think it better to 'defer here to the trial court to address the matter in the first instance'" (quoting *Concord Enters., Inc. v. Binder*, 710 A.2d 219, 223 n. 6 (D.C. 1998))).

## III. Conclusion

For the foregoing reasons, we reverse the trial court's order granting Sambazon's motion to dismiss and remand the case to the trial court for further proceedings consistent with this opinion.

*So ordered.*